James P. **FREE**, Jr., Petitioner–Appellee/Cross–Appellant,

v.

Howard A. **PETERS**, III, et al., Respondents–Appellants/Cross–Appellees.

Nos. 92–3618, 92–3711 and 93–2517.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 25, 1994.

Decided March 31, 1994.

Kimball R. Anderson, Bruce R. Braun, and Gregg D. Reisman, Winston & Strawn, Chicago, IL, for James P. Free, Jr., petitioner.

Arleen C. Anderson, Paula Giroux, Asst. Attys. Gen., Vincenzo Chimera, Richard Schwind, Office of the Atty. Gen., Steven J. Zick, Terence M. Madzen, Asst. Atty. Gen., Office of the Atty. Gen., Criminal Appeals Div., and Jack Donatelli, Asst. Atty. Gen., Office of U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, for Howard A. Peters, III, respondent.

Arleen C. Anderson, Paula Giroux, Asst. Attys. Gen., Vincenzo Chimera, Richard Schwind, Office of the Atty. Gen., Steven J. Zick, Office of the Atty. Gen., Cr. Appeals Div. and Jack Donatelli, Asst. Atty. Gen., Office of the Atty. Gen., Civ. Div., Appellate Section, Chicago, IL, for Michael P. Lane and Neil F. Hartigan, respondents.

Cynthia Grant Bowman, Northwestern University Legal Clinic, David J. Bradford, Locke E. Bowman, III, and Kathleen M. Banar, University of Chicago Law School, Chicago, IL, for MacArthur Justice Center, amicus curiae.

Before POSNER, Chief Judge, and CUMMINGS, BAUER, CUDAHY, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, and ROVNER, Circuit Judges.

## ON PETITION FOR REHEARING EN BANC

On January 18, 1994, petitioner-appellee/cross-appellant filed a petition for rehearing with a suggestion of rehearing en banc. The panel majority voted to deny rehearing, Judge Cudahy dissenting. A vote of the active members of the Court was requested on the suggestion of rehearing en banc, and a majority has voted to deny a rehearing en banc.* The petition is therefore DENIED.**

ROVNER, Circuit Judge, with whom CUDAHY, Circuit Judge, joins, dissenting from the denial of rehearing *en banc*.

I believe this case should have been reheard by the full court. Our decisions upholding the provisions of the Illinois death penalty statute and the pattern jury instructions regarding aggravating and mitigating factors rest on the assumption that the statute and the instructions provide sufficient guidance for a jury to balance those factors appropriately. *Silagy v. Peters*, 905 F.2d 986, 998–99 (7th Cir.1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991); *Williams v. Chrans*, 945 F.2d 926, 936–37, 938 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3002, 120 L.Ed.2d 877 (1992). Although there may be room for disagreement as to what the record in this case ultimately proves, at the very least it calls into question the soundness of that assumption.

Mr. Free's jury was instructed (in language that closely tracks the relevant statutory provision):

> If, from your consideration of the evidence and after your due deliberation, there is at least one of you who finds that there is at least one mitigating factor sufficient to preclude the imposition of the death sentence then you should return a verdict that the Defendant be sentenced to imprisonment. On the other hand, if from your consideration of the evidence and after your due deliberation you unanimously find that there are no mitigating factors sufficient to preclude the imposition of the death sentence then you should return a verdict that the Defendant be sentenced to death.

and

> If you unanimously find from your consideration of all the evidence that there are no mitigating factors sufficient to preclude the imposition of a sentence of death then you should return a verdict imposing a sentence of death. If, on the other hand, you do not unanimously find that there are no mitigating factors sufficient to preclude the imposition of a sentence of death then you should return a verdict that the sentence of death should not be imposed.

*See* 720 ILCS 5/9–1(g). I cannot agree that these instructions are as lucid as the court has portrayed them to be. *See Free v. Peters*, 12 F.3d 700, 704 (7th Cir.1993). The quadruple negative aside (*see Gacy v. Welborn*, 994 F.2d 305, 314 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 269, 126 L.Ed.2d 220 (1993)), I doubt a lay jury's ability to comprehend what the critical phrase "sufficient to preclude" means in terms of the parties' respective burdens (or lack thereof) and how aggravating and mitigating factors are to be weighed against one another. *See Silagy*, 905 F.2d at 1014 (Ripple, J., dissenting from denial of rehearing *en banc*). The court's contrary holding in *Silagy* notwithstanding, 905 F.2d at 998–99, "suf-

---

\* Judges Cudahy, Ripple, and Rovner voted to grant the petition for rehearing en banc. A dissent from the denial of rehearing en banc follows.

\*\* Judge Flaum did not participate in the vote for rehearing en banc.

ficient to preclude" seems to me to create a rebuttable presumption in favor of the death penalty. More important than our own divergent impressions, however, is the substantial evidence presented here that the instructions indeed do not adequately convey to jurors the balancing process in which they are to engage. *See United States ex rel. Free v. Peters,* 806 F.Supp. 705, 728–31 (N.D.Ill.1992); *United States ex rel. Free v. McGinnis,* 818 F.Supp. 1098, 1121–26 (N.D.Ill.1992). Thus, although we have imagined that jurors will readily discern their duty to consider the individual characteristics of the individual defendant and the nature of his crime, balance the competing equities, and impose the death penalty only if they unanimously agree that the aggravating circumstances outweigh the mitigating circumstances (*Silagy,* 905 F.2d at 999–1000; *Williams,* 945 F.2d at 938), Professor Zeisel's study suggests that jurors given the pattern instructions will, with an alarming frequency, misconstrue their task. As Judge Aspen explained below:

> The source of this misunderstanding is conspicuous. It is ironic that to the extent that the sentencing scheme is designed to be a process of balancing aggravating and mitigating evidence, neither the IPI [pattern instruction] nor the *Free* instructions uses the term "balance" or "weigh." Rather, these instructions rely on the term "preclude," a word which is defined as "to prevent" or "rule out." *See* Webster's New International Dictionary of the English Language 1785 (3d ed. 1976). In addition to the likelihood that a juror would not know the definition of the word "preclude," the common usage of the term does not convey the notion that the Illinois death penalty statute requires a weighing process.

806 F.Supp. at 729–30 (footnote omitted); *see also* 818 F.Supp. at 1125–26.

I am reluctant to conclude as readily as the court has that the evidence on which Judge Aspen relied was insufficient to expose a constitutional defect in the jury instructions. *See Free,* 12 F.3d at 705–06; *Gacy,* 994 F.2d at 308–10. Although Professor Zeisel's study may have been imperfect, it was subjected to

rigorous scrutiny during a six-day hearing that Judge Aspen described as "exhaustive." 806 F.Supp. at 731. Both Magistrate Judge Weisberg and Judge Aspen (who himself had previously found "no reason to doubt" the clarity of the jury instructions, *see id.,* citing *Williams v. Chrans,* 742 F.Supp. 472, 500 (N.D.Ill.1990)), found Professor Zeisel's work to be reliable and persuasive evidence that the instructions confuse rather than clarify the jury's role in deciding whether to impose the death penalty. 806 F.Supp. at 731–32; 818 F.Supp. at 1125–26. As Judge Cudahy noted, "These are stubborn facts, which would give me pause in brushing off the entire exercise as unworthy of a passing grade. The trial courts are our window on reality, and I would be exceedingly cautious in arrogating their functions to ourselves." 12 F.3d at 708 (Cudahy, J., dissenting). Indeed, the fact of our own disagreement as to the clarity and meaning of the instructions lends support to Professor Zeisel's conclusion that jurors are unable to discern from them their proper role in evaluating the evidence.

I also am unconvinced that *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), precludes a reexamination of *Silagy* in light of the evidence adduced below. *See Free,* 12 F.3d at 705; *Gacy,* 994 F.2d at 310–11. As Judge Cudahy pointed out, Mr. Free is not asking for a new constitutional rule—"[t]he relevant 'rule' is the rule of *Gregg v. Georgia:* [428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)]: it is cruel and unusual punishment, forbidden by the Eighth Amendment, for a state to take a life unless the sentencing body's discretion is cabined in an intelligent manner." 12 F.3d at 708 n. 2. Mr. Free is simply asking that we revisit the factual underpinning of *Silagy*'s conclusion that the Illinois pattern instructions comply with the rule announced eighteen years ago in *Gregg. See id.* If, in reality, the instructions do not provide the guidance to jurors that *Gregg* requires, then *Teague* should not tether us in perpetuity to *Silagy*'s contrary assumption.

I share wholeheartedly Judge Bauer's belief that the jury is the backbone of our system of justice. 12 F.3d at 707 (Bauer, J., concurring). Time and again in my years as

a district judge I was impressed with the ability of a jury to reach a fair result despite the complexities of the facts and the law. But we cannot ignore the possibility that when jurors are given inadequate guidance, their verdict may be unsound. Nor should we hesitate to reconsider the assumptions we have made about the ability of jurors to make sense of a complicated sentencing scheme when new evidence suggests that we may have been mistaken. If we persist in notions that do not comport with the actual strengths and limitations of ordinary, human jurors, we will in the long run only undermine public confidence in the very system we cherish.