Peter Anthony CANTU, Appellant,

v.

The STATE of Texas.

No. 71,857.

Court of Criminal Appeals of Texas, En Banc.

Jan. 29, 1997.

Robert A. Morrow, Houston, for appellant.

Kimberly Aperauch Stelter, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for the state.

### OPINION

MANSFIELD, Judge.

Appellant, Peter Anthony Cantu, was charged by indictment with the offense of capital murder for killing Jennifer Ertman in the course of committing or attempting to commit robbery, kidnapping and aggravated sexual assault. Appellant was subsequently convicted of capital murder in February of

1994.[1] TEX. PENAL CODE ANN. § 19.03(a)(2). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure art. 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death.[2] Article 37.071 § 2(g). Direct appeal is automatic. Article 37.071 § 2(h). We will affirm.

Appellant raises forty-five points of error. He does not challenge the sufficiency of the evidence to support the jury's verdict finding him guilty of capital murder. However, he does contend the evidence is insufficient to support the jury's affirmative answer to the special issue on future dangerousness. We will address the points as they are presented to us. A brief summary of the facts will be helpful.

Looking at the evidence in the light most favorable to the jury's verdict, the record reveals the following facts: Appellant was the self-appointed leader of a gang called the "Black and Whites" in Houston. On the night of June 24, 1993, this gang met to initiate a new member, Raul Villareal. The other gang members present were Roman Sandoval, Joe Medellin, Efrian Perez, and Derrick Sean O'Brien. Roman's brother, Frank, and Joe's fourteen-year-old brother, Venancio, were also present. The initiation involved fighting each member of the gang for a five to ten minute period. After Raul fought all of the members, he was welcomed into the gang. The gang then drank beer and engaged in horseplay. The group then headed towards some nearby railroad tracks.

Meanwhile, fourteen-year-old Jennifer Ertman and sixteen-year-old Elizabeth Pena were visiting a girlfriend. At 11:30 p.m., Jennifer and Elizabeth decided to head for Elizabeth's house where Jennifer would then call a taxicab to take her home. They decided to take a shortcut across the railroad tracks. Jennifer and Elizabeth first encountered Roman and Frank as they made their way home, but managed to pass them without incident. However, as they passed Joe Medellin, he grabbed Elizabeth and dragged her down a hill as she screamed for help. In response to her friend's cries, Jennifer ran

back to help, but appellant grabbed her and dragged her down the hill as well. At this point, the Sandoval brothers decided that it was time to leave. Appellant asked them if they wanted to "get some," but Roman told him that he did not rape or kill girls.

The subsequent boastful statements of the remaining gang members revealed that what then ensued was a brutal gang rape of both of the girls. Fourteen-year-old Venancio watched as the others raped both girls orally, vaginally, and anally until appellant told him that he should "get some." The girls were still being raped when appellant whispered to Venancio, "We're going to have to kill them." When everyone was finished, appellant told them to take the girls to the woods where they proceeded to strangle them. Appellant kicked Elizabeth in the face with his steel toe boots, knocking out several teeth, and he stepped on Jennifer's neck until she stopped moving. Subsequently, they all took turns stomping on both girls necks to make sure they were dead.

Later that night, appellant, Joe, Efrian, and Raul regrouped at appellant's house to brag about their exploits. Appellant walked in as the rest were recounting their exploits to his older brother and sister-in-law, Joe and Christina Cantu, in graphic detail. Appellant appeared happy and amused by the conversation and readily agreed with the recollection of events. Appellant then parceled out jewelry and money he had taken from the girls.

Christina subsequently convinced her husband to report the incident to the police. By the time the bodies were discovered, they were so badly decomposed that dental records were required to identify them. However, enough tissue did exist for the medical examiner to determine that the girls had died of a trauma to the neck which was consistent with strangulation. Eventually, all of the individuals who participated in the gang rape and murder were arrested and most of the jewelry was recovered, including some from

---

1. The crime was committed on or about June 24, 1993.

2. Any subsequent references to Articles are to those in the Texas Code of Criminal Procedure unless otherwise identified.

appellant's bedroom. Appellant also gave two confessions.

■ In points of error one and two, appellant complains that the trial court erred in overruling his challenge to the Texas death penalty scheme. Specifically, he alleges that denying jurors the knowledge that appellant would have to serve at least 35 years in prison before becoming eligible for parole if sentenced to life in prison results in the arbitrary imposition of the death penalty in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10, 13, and 19 of the Texas Constitution. In point three, appellant avers that the trial court erred in prohibiting him from introducing testimony that he would have to serve 35 calendar years before becoming parole eligible if sentenced to life imprisonment. And in point four, appellant contends that the trial court erred by denying appellant the right to question jurors about their ability to consider the 35 calendar year condition on a life sentence.

We have already decided these issues adversely to appellant. *Smith v. State*, 898 S.W.2d 838 (Tex.Crim.App.) (plurality op.), *cert. denied*, —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995); *Willingham v. State*, 897 S.W.2d 351 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995); *Broxton v. State*, 909 S.W.2d 912 (Tex.Crim.App.1995); *Sonnier v. State*, 913 S.W.2d 511 (Tex.Crim.App.1995). We have previously held a defendant is not entitled to an instruction on parole law in a capital case under the Texas Constitution. *Elliott v. State*, 858 S.W.2d 478 (Tex.Crim. App.), *cert. denied*, 510 U.S. 997, 114 S.Ct. 563, 126 L.Ed.2d 463 (1993); *Boyd v. State*, 811 S.W.2d 105 (Tex.Crim.App.1991). Appellant has given us no reason to revisit our analyses in these cases, nor has he shown us any distinguishing evidence in the record or provided us with any other reason why these cases should not control in the instant case.

Points of error one through four are overruled.[3]

In his fifth point of error, appellant complains that the trial court erred in overruling his objection to the prosecutor's argument that the jury had to find a nexus between the defense evidence and the crime before they could consider it mitigating. Appellant specifically complains of the emphasized portion of the following argument:

[THE STATE:] [I would] [l]ike to talk to you briefly about the issue of mitigation[.]

* * *

Nowhere will you find the court instructing you that you have to find any evidence that you've heard in this case mitigating.

* * *

[W]hy do you consider mitigation, ... that's because the courts allow you to individualize the justice. There might be a fact and circumstance out there that just cries out for mercy, cries out for you to give the person some leniency and not give them the death penalty, .... Keep that in mind when you think in terms of what is it that really compels our mercy and do you see it in this case? A little thing that I would suggest is that you kind of go in the step of number one, you look to determine is there any mitigation. If there is the mitigation, is it sufficient, sufficient to rise to the level that you want to take this man, [appellant], and show him some mercy. Does it rise to that level? And then ask yourself another question. *Is there a connection between what they try to give to you as mitigation, is there some connection between that and the crime itself, when you think of what you discovered to possibly be mitigating. Does that .cause the defendant's behavior? Does it justify it? Is there a link there and correlation between what you've heard and what you saw happen on June 24th, 1993?*

[DEFENSE:] *Excuse me, [prosecutor's name omitted]. Your Honor, we object to*

**3.** Appellant contends the State "opened the door" to testimony about parole eligibility in its cross-examination of Prof. James Marquart of Sam Houston State University by mentioning various capital murder defendants who committed violent crimes while in prison as well as two who committed murders after their release from prison. A reading of the record of the cross-examination shows appellant is mistaken: the State's emphasis was on appellant's future dangerousness *while in prison.*

*the suggestion that there has to be a nexus between the mitigation and the returning of a verdict which would result in a life sentence.*

THE COURT: Overruled.

Appellant argues, in essence, that the prosecutor misstated the law. He asserts that the nexus requirement set out by this Court in cases like *Lackey v. State,* 819 S.W.2d 111, 135 n. 10 (Tex.Crim.App.1989), *Mines v. State,* 852 S.W.2d 941 (Tex.Crim.App.1992),[4] *Richardson v. State,* 879 S.W.2d 874 (Tex. Crim.App.1993), and *Willingham v. State, supra,* is no longer valid in light of the post-*Penry* sentencing scheme.[5] He conclusorily states that, while a nexus was required under these post-*Penry*, pre-statute cases, this should no longer be the law in light of the enactment of Article 37.071, Section 2(e).[6]

■ We have held that, to constitute proper jury argument, the argument must encompass one (or more) of the following: (1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law enforcement. *McFarland v. State,* 845 S.W.2d 824, 844 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *Gaddis v. State,* 753 S.W.2d 396 (Tex.Crim. App.1988). We noted, in *Gaddis, supra,* that counsel is allowed wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable and offered in good faith. Conversely, jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence to constitute reversible error. *Gaddis, supra,* at 398. In determining whether jury argument is extreme or manifestly improper, we look at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial.

*Johnson v. State,* 604 S.W.2d 128, 135 (Tex. Crim.App.1980) (panel op.).

■ In the instant case, it is evident the prosecutor did not inject any new facts into the proceeding, much less new facts that could be deemed prejudicial or harmful. Also, it is clear from her closing argument the prosecutor never told the jury they must find a nexus between the offense and the evidence offered as mitigating by the appellant; she merely suggested that they weigh the evidence in this manner. The suggestion, given the context in which it was made, cannot be characterized as a misstatement of the law, even assuming, arguendo, appellant's assertion on this point is correct. Additionally, given the plain language of Article 37.071 Section 2(e), as well as our holdings in the cases cited above, we find no bad faith on the part of the prosecutor, nor do we find evidence of an intent, given the entire record of final arguments, on the part of the State to deny appellant a fair and impartial trial. *Johnson, supra,* at 135. The inferences drawn by the prosecutor from the evidence were not so extreme or improper as to rise to the level of reversible error. As we do not find the prosecutor's argument to be manifestly prejudicial or improper, we need not address appellant's contention that the nexus requirement is no longer valid given the enactment of Article 37.071, Section 2(e). Furthermore, any error, assuming there was error, was harmless. Tex.R.App.Proc. 81(b)(2). Point of error five is overruled.

■ In his sixth point of error, appellant contends that the trial court erred in admitting the hearsay statements of appellant's co-defendants who incriminated him. At trial, appellant's sister-in-law, Christina Cantu, and appellant's brother, Joe Cantu, both took the stand and testified that appellant and his co-defendants arrived at the Cantu house the night of the murders and freely talked, and even bragged, about the events of the eve-

---

4. Mines was remanded by the United States Supreme Court for review in light of *Johnson v. State,* 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). However, we affirmed the original holding on appeal. *Mines v. State,* 888 S.W.2d 816 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1978, 131 L.Ed.2d 866 (1995).

5. *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

6. We note that Article 37.071, Section 2(e) is essentially a codification of the dictates set out in *Penry, supra,* and has not been amended since its enactment, effective September 1, 1991.

ning. The first of these two witnesses, Christina Cantu, testified about how the individuals appeared when they arrived at the house and she told the jury about behavior they engaged in while there. However, before she ventured into actual statements that appellant and/or his co-defendants made, the following occurred:

[THE STATE:] Did someone else tell you what happened?

[APPELLANT:] Excuse me, ma'am. We object to the out of court statements of these co-defendants that we can't confront and cross examine.

THE COURT: Overruled.

[APPELLANT:] May we have a running objection to the out of court statements, judge?

THE COURT: Yes, sir.

The same objection was lodged with regard to the testimony of Joe Cantu. However, when requesting a running objection, appellant asked for "a running objection to all these hearsay statements." Appellant's objections encompass complaints under both the Texas Rules of Criminal Evidence governing the admission of hearsay statements and the Confrontation Clause of the United States Constitution. Because appellant did not specify at trial which complaint he was asserting, his objection was not sufficiently specific to preserve review on appeal. Tex. R.App. Proc. 52(a); *see Davis v. State*, 872 S.W.2d 743, 748, n. 11 (Tex.Crim.App.1994). However, because his last objection was specifically to "hearsay," we will address the point on this ground.

▆ Although the record reveals that several of the statements complained of were made before appellant arrived at the house, similar statements were still being expressed when he did arrive. In hearing these comments, appellant consistently "agree[d] with" his cohorts' renditions of the evening's events. Specific examples of these statements include the following:

[from C. Cantu's testimony]

[WITNESS:] At that time [appellant] walked in, and when he walked in they were still talking about it, and [appellant] didn't say he did anything except he just kept agreeing with it. He didn't go into details.

* * *

[THE STATE:] During this time when they're saying what they did to the girl, what's [appellant] doing or saying?

[WITNESS:] He is just agreeing with them.

[THE STATE:] And how did he agree with them? What did he say?

[WITNESS:] I did that. Yeah, yeah, I remember that.

* * *

[THE STATE:] And when he said, yeah, I did that, what was he talking about, Christina?

[WITNESS:] When one of them said, I made her suck my dick, he said, oh, yeah, I did that. Or when they were saying, I fucked her in the pussy, he said, yeah, I remember I did that, too.

[THE STATE:] And did they talk about having anal intercourse with the girls in front of [appellant]?

[WITNESS:] Yes.

[THE STATE:] And what would he say about that?

[WITNESS:] He just said, I did that, too.

* * *

[THE STATE:] So, at some point did they move on from talking about what they did to them sexually and tell you that they killed them?

[WITNESS:] Yeah. After they finished laughing and stuff, and I said—I don't remember who said it but one of them asked, I think it was my husband, I'm not sure, said, well, what happened to them, and they said, we had to kill them.

[THE STATE:] Who said we had to kill them?

[WITNESS:] [Appellant], Joe, Junior and Raul.

[THE STATE:] They were all saying that?

[WITNESS:] Yes.

The statements in question made in the presence of appellant were admissible as adopted admissions under Tex.R.Crim. Evid.

801(e)(2)(B), as appellant, by his actions and responses, readily agreed with them. *See Tucker v. State*, 771 S.W.2d 523, 535 n. 5 (Tex.Crim.App.1988), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989). Even if the statements that were made in the presence of appellant were hearsay, they were admissible under Tex.R.Crim.Evid. 803(23) as statements against interest, corroborated by appellant's own responding actions and the co-defendants' possession of the victims' jewelry and the blood on the co-defendants' clothing when they came to the Cantu residence. *See Davis v. State*, 872 S.W.2d 743 (Tex.Crim.App.1994). It should also be noted that the statements were made in the presence of appellant's brother (a gang member himself) and his sister-in-law and thus the speakers reasonably felt they could confide in them and had no motivation to lie or place the blame for the crime on someone else. *Compare, Cofield v. State*, 891 S.W.2d 952 (Tex.Crim.App.1994).[7] Point of error six is overruled.

Appellant alleges in point of error seven that the trial court reversibly erred in allowing the State to impeach defense witness Beatrice Martinez on a collateral matter. Martinez was appellant's second witness at the punishment phase of trial. Martinez was fifteen years old and testified that she had known appellant for approximately three years and went out with him and mutual friends almost every weekend. She testified that appellant was friendly to her and never mistreated or was disrespectful to her. On cross-examination, the State asked Martinez if she thought the killing of the two girls was "funny." When the witness answered in the negative, the State asked that the jury be excused and introduced two letters the witness had written to appellant's co-defendant, Efrian Perez, and questioned her about one of them, which read:

> Efrian, what's up, ugly? Is your room clean today?
>
> Today you all came out on TV again and it said that their parents are trying to do

everything they can to give you all the death penalty, even Yuni, but I don't think so because that's when we go out and take our asses on strike. All cuzz them fine ass girls you all wanted to fuck. Especially the white chick, she looked good, huh, Junior? Ha-ha.

Appellant objected that this was improper impeachment on a collateral matter. The court overruled his objection. Appellant asked for a running objection as to this line of questioning.

When the jury was brought back in, the State again asked if the witness thought the killing of the two girls was funny. The witness replied in the negative. The prosecutor then asked Martinez if she had written the above cited letter to Perez, to which question she replied that she had.

Texas Rule of Criminal Evidence 610(b) provides: "a witness may be cross-examined on any matter relevant to any issue in the case, including credibility." The trial court has discretion as to the extent of cross-examination of a witness for the showing of bias or as to credibility, and its decision is not subject to reversal on appeal absent a clear abuse of discretion. *Chambers v. State*, 866 S.W.2d 9, 27 (Tex.Crim.App.), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). It is clear that the excerpt from the letter was admissible to show the witness' strong bias in favor of appellant. The excerpt was also relevant as to the witness' credibility as it contradicted her testimony that she did not find the murders of Jennifer Ertman and Elizabeth Pena somehow funny or amusing. Point of error seven is overruled.

In point of error eight, appellant asserts that the trial court erred in admitting "victim impact evidence." Specifically, he avers that because the indictment only named Ertman, allowing victim impact evidence (or any other evidence) regarding Pena was error. Prior to the trial's opening statements, appellant

---

7. Joe Cantu also testified as to the conversation of Joe, Efrian and Raul concerning the events of that night. During that conversation, Joe Cantu testified appellant agreed he had killed both girls and stomped on their necks. Joe Cantu also testified appellant agreed with everything that was being said about the rapes and killing, nodding his head and saying, "[Y]eah daddy, you got it."

objected that any testimony regarding the kidnapping, robbery, sexual assault, or murder of Pena constituted evidence of extraneous offenses. Plus, appellant objected at the punishment stage to the testimony of Pena's mother, M. Pena, who testified as to her daughter's good character, the search for her daughter, and the impact the disappearance had on the rest of the family members. He objected that this evidence was not relevant to the special issues and was more prejudicial than probative. Appellant's objections were overruled and the evidence was admitted.

■ To begin, we note that the only evidence that appellant specifically complains about on appeal is the testimony of Pena's mother at the punishment phase of trial. Therefore, if he asserts that any evidence presented during the guilt/innocence phase constitutes inadmissible "victim impact evidence," he has not preserved that complaint for appellate review. Tex.R.App. Proc. 74(f). Notwithstanding this, we hold that evidence concerning the sexual assault, robbery, and murder of Pena is admissible at guilt/innocence as same transaction contextual evidence to impart to the trier of fact information essential to understanding the context and circumstances of the offense. *Mayes v. State,* 816 S.W.2d 79, 86 (Tex.Crim.App. 1991); *Camacho v. State,* 864 S.W.2d 524 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994), *Nelson v. State,* 864 S.W.2d 496, 498 (Tex. Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994); *Rogers v. State,* 853 S.W.2d 29 (Tex.Crim.App. 1993). Thus, this evidence is admissible under Texas Criminal Evidence Rule 401.

On appeal, appellant claims that the entire testimony of Pena's mother was inadmissible at the punishment stage of trial. The testimony of M. Pena consisted of her telling the jury about her family and showing the jury pictures of the victim's sixteenth birthday party. M. Pena also told the jury what her daughter had been like in life: personality traits she exhibited, activities she had engaged in, and similar good character type evidence. M. Pena then testified as to her relationship with her daughter and her daughter's relationship with other members of the family. M. Pena explained to the jury the events surrounding her daughter's disappearance and the family's effort to find her. And, finally, she told the jury about the effect her daughter's death was having on her and the rest of her family.

In *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court recognized that prior jurisprudence dictates that a capital defendant must be treated as a "uniquely individual human being." *Payne,* 501 U.S. at 822, 111 S.Ct. at 2606–07. However, the Supreme Court also held that the State has a legitimate interest in countering this individualization of the defendant by reminding the jury that the victim, also, was an individual whose death represents a unique loss to society and to his or her family. *Id.* at 826–28, 111 S.Ct. at 2609. Thus, the Supreme Court held:

> [I]f the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

*Id.* Hence, the Supreme Court removed the Eighth Amendment bar to evidence about the victim and evidence about the impact of the murder on the victim's family created by *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and left the decision up to the individual states as to whether this sort of evidence is relevant under their own individual punishment schemes. Therefore, the question in the instant case is whether the evidence presented was admissible under our capital sentencing scheme.

In *Ford v. State,* 919 S.W.2d 107 (Tex. Crim.App.1996), we held that certain "victim impact evidence" was arguably relevant to the defendant's moral culpability contained within the third special issue that the jury was required to answer:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that sentence of life imprisonment rather than a death sentence be imposed.

In *Ford,* the deceased victim's sisters and mother, who had also been victims of the crime, testified regarding the relationship each had with the deceased victim as well as to the effect that the crime had on them. Furthermore, the father, who came upon the bloody scene after the perpetrators had fled, testified about how he had been affected by his son's death and about how he felt sorry for his daughters now. We concluded that the trial court's decision to admit this testimony was not an abuse of discretion in that such testimony was within the zone of reasonable disagreement of evidence relevant to sentence. *Id.*

In contrast, in *Smith v. State,* 919 S.W.2d 96 (Tex.Crim.App.1996) (plurality op.), we noted that it has long been the law in Texas that evidence of a deceased's good and peaceful character is not admissible unless and until that character is placed in issue by the defendant. (Citing *Armstrong v. State,* 718 S.W.2d 686, 697 (Tex.Crim.App.1985)). Hence, a plurality of the court concluded that testimony by the sister of the victim concerning the victim's good nature, hobbies, and work ethic was not relevant to sentencing and, therefore, should not have been admitted.

 The instant case is distinguishable from *Payne, Ford* and *Smith* as Pena was not the victim named in the indictment. Evidence concerning her sexual assault, robbery and murder is admissible as same transaction contextual evidence. *Nelson, supra,* at 498. However, evidence as to her good character, activities she enjoyed and the impact of her on her family is not relevant as appellant was not on trial for her murder and such evidence serves no purpose other than to inflame the jury. We note the Supreme Court in *Payne* held the Eighth Amendment did not bar introduction of evidence about the victim and the impact of the victim's death on his or her family as such evidence may be relevant as to the jury's determination as to imposition of the death penalty. The Court opined that "victim impact evidence" is designed to show the victim's "uniqueness as a human being" and "the state has legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family...." *Payne,* 501 U.S. at 825, 111 S.Ct. at 2608. Pena, however is not the "victim" for whose death appellant has been indicted and tried, and *Payne* does not contemplate admission of such evidence as permissible under the Eighth Amendment.

 The danger of unfair prejudice to a defendant inherent in the introduction of "victim impact" evidence with respect to a victim not named in the indictment on which he is being tried is unacceptably high. The admission of such evidence would open the door to admission of victim impact evidence arising from *any* extraneous offense committed by a defendant. Extraneous victim impact evidence, if anything, is more prejudicial than the non-extraneous victim impact evidence found by this Court to be inadmissible in *Smith, supra.* We hold that such evidence is irrelevant under Tex.R.Crim.Evid. 401 and therefore irrelevant in the context of the special issues under Art. 37.071.

 However, the erroneous admission of M. Pena's testimony as to her daughter's character and activities was harmless beyond a reasonable doubt. The record reveals that M. Pena was one of over thirty witnesses who testified at punishment, and her testimony before the jury comprised less than twenty pages out of over 700 pages of testimony at punishment. During its jury argument at punishment, the State did not even mention her testimony, much less emphasize it. Given the sparsity of the victim impact evidence, the fact that it was not mentioned by the State during arguments (appellant did briefly refer to this testimony during his punishment arguments), and the overwhelming focus dur-

ing the punishment phase on appellant's behavior and the circumstances of the offense, we conclude the victim impact evidence made no contribution to punishment. Tex. Rule App. Proc. 81(b)(2); *Harris v. State,* 790 S.W.2d 568, 587–588 (Tex.Crim.App.1989); *Smith v. State,* 919 S.W.2d 96, 102–03 (Tex. Crim.App.1996). Point of error eight is overruled.

 In point of error nine, appellant complains that the trial court committed reversible error in failing to grant a mistrial following improper argument by the State. Specifically, appellant complains of the following argument:

Now [defense counsel], I don't blame him. I'd do the same thing if I was in his position. You know, if you got the law you argue the law, if you got the facts you argue the facts, if you don't have either the law or the facts you don't have anything. That's what they're doing; they're arguing nothing.

Appellant objected to the "attack over Counsel's shoulder," which objection the trial court sustained. Appellant then requested and received an instruction to the jury to disregard the comment. However, his request for a mistrial was thereafter denied.

Even if we assume that the prosecutor's statement was an improper comment, we conclude it was not so egregious that it was not cured by the instruction given to the jury to disregard it. *Dinkins v. State,* 894 S.W.2d 330, 356 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). The gist of the State's argument is the defense did not have any evidence in its favor, which is a proper response to defense counsel's just-completed argument that the evidence was insufficient to convict appellant of capital murder. The State did not directly or indirectly accuse counsel of suborning perjury or manufacturing evidence, as appellant claims in his brief. Point of error nine is overruled.

In his tenth point of error, appellant contends that the trial court erred in denying appellant's request for expert assistance to challenge the constitutionality of the special issues at the punishment phase. In related point of error eleven, appellant alleges that the trial court erred in failing to set aside the indictment because the special issues are not properly understood by the jurors. In support of his argument, appellant explains that prior to trial, he filed a "Motion to Provide Funds for Expert Assistance—Jury Study." By his motion, appellant proposed that the trial court should *provide him funds* with which he could hire "a scholar" who would study a sample of jurors and their understanding of the special punishment issues.

In *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court recognized that due process requires that a defendant have access to the raw materials integral to the building of an effective defense. However, that Court also said that the State need not "purchase for an indigent defendant all the assistance that his wealthier counterparts might buy." *Id.*

This Court recently applied the *Ake* standard as it relates to a defendant asserting an insanity defense and rejected the notion that a "court's expert" necessarily fulfills the role of a "psychiatric assistant to the indigent accused envisioned by *Ake.*" *De Freece v. State,* 848 S.W.2d 150, 159 (Tex.Crim.App.), *cert. denied,* 510 U.S. 905, 114 S.Ct. 284, 126 L.Ed.2d 234 (1993). We further held in *Rey v. State,* 897 S.W.2d 333, 337 (Tex.Crim.App. 1995), that *Ake* applies to non-psychiatric experts like pathologists.

 Notwithstanding this, the *Ake* Court, 470 U.S. at 83, 105 S.Ct. at 1096, clearly indicated that an indigent defendant does not have a constitutional right to *receive funds* to hire his own expert. As that Court stated:

This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision on how to implement this right.

We hold this requisite to be applicable to non-psychiatric experts as well. Texas Code of Criminal Procedure article 26.05(a) pro-

vides that "counsel ... shall be *reimbursed* for reasonable expenses incurred with prior court approval for purposes of investigation and expert testimony[.]" (Emphasis added.)

■ Appellant has shown no particularized need for this study. His proposal is based upon a similar study undertaken in Illinois in which an expert found that jurors did not understand the Illinois punishment statutes. In response to the study, a district court judge held that the statute unconstitutionally permitted the arbitrary and unguided imposition of the death penalty. *See Free v. Peters*, 806 F.Supp. 705 (1992). However, this holding was subsequently rejected by the Seventh Circuit. *See Free v. Peters*, 19 F.3d 389 (7th Cir.), *cert. denied*, 513 U.S. 967, 115 S.Ct. 433, 130 L.Ed.2d 345 (1994). Appellant has provided no reason why the situation should be different in Texas. Indeed, we have rejected this argument recently. *Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim.App.1996). Appellant's tenth and eleventh points of error are overruled.

Appellant asserts in points twelve and thirteen that the Texas death penalty has been arbitrarily imposed and is unconstitutional because of the different capital sentencing schemes that have been in effect since the early 1970's. He specifically states that the Texas death penalty is unconstitutional under the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and Article 1, Section 13 of the Texas Constitution.

■ This Court has held that, when challenging the constitutionality of a statute:

> [I]t is incumbent upon the defendant to show that in its operation the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient.

*Santikos v. State*, 836 S.W.2d 631 (Tex.Crim. App.), *cert. denied*, 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992). Appellant was tried under the 1992 version of Article 37.071.[8] Since appellant has simply made a global argument as to all capital defendants since the 1970's, and has not shown us how his specific rights were violated by applica-

tion of the statute, his contentions are without merit. *Sonnier v. State*, 913 S.W.2d 511, 520–21 (Tex.Crim.App.1995); *McFarland v. State*, 928 S.W.2d 482 (Tex.Crim.App.1996). We also note that the Texas death penalty scheme has been amended, at least in part, to address concerns raised by the Supreme Court. Section 2(e) was added to address *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), with respect to mitigating evidence. Additionally, the Texas death penalty scheme was found constitutional by the Supreme Court in *Jurek v. Texas*, 428 U.S. 262, 270–72, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929 (1976), and it has not been changed substantially since then. Point of error twelve is overruled.

In point thirteen, appellant remarks that this Court has said that it can and should interpret the Texas Constitution in a more expansive manner than the federal constitution and cites us to several cases for this proposition. *See Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). He then notes that the Texas Constitution proscribes "cruel *or* unusual punishments" while the Eighth Amendment prohibits "cruel *and* unusual punishments." We have previously rejected this argument. *Anderson v. State*, 932 S.W.2d 502, 509 (Tex.Crim.App.1996). Point of error thirteen is overruled.

■ Appellant avers in point fourteen that the mitigation issue set forth in Article 37.071 § 2(e) is unconstitutional in that "it does not require jury consideration of mitigation evidence when answering it." This issue reads as follows:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Appellant is incorrect. In fact, by the very language of the statute, it requires a jury to consider *all* of the evidence. Appellant's argument in effect is that a jury should be

---

**8.** This version went into effect September 1, 1991.

instructed to consider *only* mitigating evidence when addressing this special issue. We note initially that Article 37.071 does not objectively define "mitigating evidence," leaving all such resolutions to the subjective standards of the jury. *Banda v. State*, 890 S.W.2d 42, 54 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). As we stated in *Robertson v. State*, 871 S.W.2d 701, 711–12 (Tex. Crim.App.1993), *cert. denied*, 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994):

> Each juror may or may not believe certain evidence is mitigating; however, the constitution only requires that where a juror believes there is relevant mitigating evidence, that juror must have a vehicle to give his or her reasoned moral response to such evidence.
>
> * * *
>
> Appellant was not entitled to an instruction on what evidence was mitigating or on what weight to give any mitigating evidence presented at trial.

We find no constitutional infirmity as the mitigation special issue was enacted by the Legislature to address the concerns of the Supreme Court as stated in *Penry v. Lynaugh, supra.* Appellant's fourteenth point of error is overruled.

 In related points of error fifteen, sixteen and seventeen, appellant argues that the trial court erred in denying his requested charges that the jury must give effect to mitigating evidence and that the jury must consider youth and mental health as mitigating. Specifically, appellant requested the following instructions:

> You are instructed that certain evidence introduced to you has been offered in mitigation of the Defendant's punishment. That evidence, including youth and mental health testimony, may only be considered by you as mitigation of his punishment.
>
> * * *
>
> If you decide that an aspect of the Defendant's character and record or circumstances of the crime is a mitigating circumstance, you must not give it aggravating effect. Thus, if in your judgment, a mitigating circumstance independently calls for a life sentence even though it also tends to support a "yes" answer to a Special Issue, you must not answer the Special Issue "yes," but rather you should answer it "no."
>
> * * *
>
> You are instructed that, in considering the mitigating factors in answering the special issues, you are to consider the Defendant's youth as a mitigating factor."

The totality of appellant's argument and authorities is as follows:

> Appellant adopts the argument set forth in Point of Error Fourteen as if fully set forth herein. Each of these requested charges should have been submitted to the jury to correct the otherwise unconstitutional nature of the issue on mitigation as discussed in Point of Error Fourteen. By requiring the jury to at least *consider* a mitigating factor, the statute would survive constitutional scrutiny.

As stated in the previous point, neither the state nor federal constitution requires that certain evidence be labeled as mitigating, nor does it require what weight, if any, should be given to evidence that is found to be mitigating. *Robertson, supra.* See also, *Lackey v. State*, 819 S.W.2d 111 (Tex.Crim.App.1989) (not error to fail to instruct jury to consider specifically appellant's age as a mitigating factor because the jury's answer as to special issue two (future dangerousness) would reflect their consideration of *all* the mitigating evidence); *Jackson v. State*, 822 S.W.2d 18 (Tex.Crim.App.1990). Hence, appellant's first and third requested charges set out above would have been misstatements of the law. His second requested charge is also a misstatement of the law in that *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) does not require that, if a jury finds evidence to be both mitigating and aggravating, then it should give the evidence only its mitigating weight. *Zimmerman v. State*, 860 S.W.2d 89 (Tex.Crim.App.1993).[9]

---

9. *Zimmerman* was remanded by the United States Supreme Court to review in light of *Johnson v. Texas*, 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). However, we reaffirmed the original holding on appeal. *Zimmerman v. State*, 881 S.W.2d 360 (Tex.Crim.App.), *cert. de-*

Points of error fifteen, sixteen and seventeen are overruled.

■ In points of error eighteen and nineteen, appellant avers that the mitigation issue of Article 37.071 § 2(e) violates the Fifth and Fourteenth Amendments to the United States Constitution because it shifts the burden of proof to the defendant or omits it entirely. The failure to assign a burden of proof on the mitigation issue (or to place the burden on the defendant) does not render the scheme unconstitutional. In instances where mitigating evidence is presented, all that is constitutionally required is a vehicle by which the jury can consider and give effect to the mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime. *Barnes v. State*, 876 S.W.2d 316, 329 (Tex.Crim.App.), *cert. denied*, 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Johnson v. Texas*, 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). A capital sentencer need not be instructed how to weigh any particular mitigating fact in the capital sentencing decision. *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). The absence of an explicit assignment of the burden of proof does not render Article 37.071 § 2(e) unconstitutional. *See Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *Lawton v. State*, 913 S.W.2d 542 (Tex.Crim.App. 1995); *McFarland, supra.* Points of error eighteen and nineteen are overruled.

In related point of error twenty, appellant contends that the trial court erred in not allowing him to question venirepersons regarding the burden of proof on the mitigation issue. Specifically, appellant wanted to ask veniremembers if they could hold the State to the burden of proof of beyond a reasonable doubt. Because of our resolution of points of error eighteen and nineteen, *supra*, we hold that this was not error. Point of error twenty is overruled.

In points of error twenty-one and twenty-two, appellant challenges the sufficiency of the evidence to support the jury's answers to the issues on future dangerousness and mitigation. In related point twenty-three, he further alleges that the trial court's charge on unadjudicated offenses requires reversal because there is no way for this Court to meaningfully review the sufficiency of the evidence. Regarding a sufficiency review of mitigating evidence, we declined in *Colella v. State*, 915 S.W.2d 834 (Tex.Crim.App.1995) to perform such a sufficiency review "[b]ecause the weighing of 'mitigating evidence' is a subjective determination undertaken by each individual juror." *Colella, supra*, , 915 S.W.2d at 845; *Lawton, supra; Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App. 1993). We likewise decline to undertake such a review in the instant case. Point of error twenty-two is overruled.

■ In regard to points twenty-one and twenty-three, appellant argues that the jury should have been required to identify which unadjudicated offenses they found appellant had committed.[10] Because they did not, appellant contends, this Court is unable to consider the unadjudicated offenses in its evaluation, thus barring a review of the sufficiency of the evidence of the punishment issues. We disagree.

■ It is well-settled that, in reviewing the sufficiency of the evidence at the punishment stage, this Court views the evidence in the light most favorable to the verdict to determine whether *any rational trier of fact* could make the finding beyond a reasonable

---

*nied*, 513 U.S. 1021, 115 S.Ct. 586, 130 L.Ed.2d 500 (1994).

**10.** Appellant does not here argue that the extraneous offenses should not have been admitted. Nor does he argue that the charge given was inappropriate, only that it was incomplete. The charge given was as follows:

You are further instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the answers to the special issues.

*See Harris v. State*, 827 S.W.2d 949, 961–963 (Tex.Crim.App.), *cert. denied*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992).

doubt. *Barnes,* 876 S.W.2d at 322. In this review, we do not attempt to determine what a particular jury *subjectively* believed. As the factfinder, the jury is free to determine which witnesses it finds to be credible and what evidence it deems to be believable. For instance, a special instruction is not mandated under our law requiring a jury to affirmatively answer whether they believed witness A, but not witness B. Instead, the Code of Criminal Procedure simply requires that the State prove each element of a crime beyond a reasonable doubt, whether the jury believes all of the State's evidence or only part of it.

As in guilt/innocence, the State is required to prove each element of the punishment issues beyond a reasonable doubt. Extraneous offenses are only a portion of the evidence a jury is allowed to consider. The jury is not required to specifically identify what evidence it specifically uses to find that a fact is true beyond a reasonable doubt, and extraneous offenses should not be an exception to this. If enough of any type of evidence exists in the record so that any rational trier of fact could have believed an issue to be true, then we need not know what a *specific* trier of fact believed.

In light of this, we look to the record in the present case and review the evidence in the light most favorable to the verdict to determine whether a rational jury could have found sufficient evidence that appellant would probably be a danger in the future. A jury is permitted to look at several factors in its review of future dangerousness including, but not limited to:

1. the circumstances of the capital offense, including the defendant's state of mind and whether he was working alone or with other parties;

2. the calculated nature of the defendant's acts;

3. the forethought and deliberateness exhibited by the crime's execution;

4. the existence of a prior criminal record, and the severity of the prior crimes;

5. the defendant's age and personal circumstances at the time of the offense;

6. whether the defendant was acting under duress or the domination of another at the time of the offense;

7. psychiatric evidence; and

8. character evidence.

*Barnes, supra.; Keeton v. State,* 724 S.W.2d 58, 61 (Tex.Crim.App.1987) (*"Keeton I"*); *Heiselbetz v. State,* 906 S.W.2d 500, 507–508 (Tex.Crim.App.1995). These factors are also helpful in this Court's evaluation of this question.

As the recitation of the facts set out in the beginning of this opinion shows, the circumstances surrounding this crime were horrendous. Appellant, along with his co-defendants, brutally raped, strangled, and stomped the two girls to death. Evidence at trial also tended to show appellant was the leader of the gang that committed this crime, and this evidence rebutted any implication he acted under duress or the domination of another at the time of the offense. Several witnesses testified appellant had a history of violent behavior and offenses. Evidence at trial showed appellant's actions with respect to this offense were of a calculated and deliberate nature. Even if one disregards the evidence of extraneous offenses, the evidence remaining was sufficient to support the jury's affirmative finding as to the future dangerousness special issue.[11] Appellant's points of error twenty-one and twenty-three are overruled.

In related point of error twenty-four, appellant claims that the trial court erred in not including in the punishment charge special verdict forms listing the ele-

---

11. The extraneous offenses that were admitted included:
* that appellant stole a bicycle from an eight-year-old and then turned it in for a reward;
* that appellant threatened a woman and broke a window at her home;
* that appellant attacked a sixth grade teacher;
* that appellant threatened another student's father, saying that he wanted to kill him;
* that appellant created problems in school by fighting and cursing;
* that appellant threatened to kill an officer of the law; and
* that appellant made threats at a hospital and in jail.

ments of each unadjudicated offense admitted by the State. Appellant concedes that there is no requirement that all statutory elements be proven before evidence of an extraneous offense can be admitted at punishment. *Spence v. State,* 795 S.W.2d 743, 759 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991). We further note that appellant made no request for such a special verdict form and no objection was made to the instruction given at trial. *See* Article 36.15; Tex.R.App. Proc. 52(a). Appellant's failure to request a special verdict form at trial bars him from now complaining on appeal under *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984), since no egregious harm to appellant has been shown. Point of error twenty-four is overruled.

In his twenty-fifth point of error, appellant complains that the death penalty statute is unconstitutional as applied to him in that it failed to narrow the sentencer's discretion as a result of the deletion of the deliberateness issue. He contends in his twenty-sixth point of error that the scheme is unconstitutional as applied in that it fails to channel the sentencer's discretion. And, finally, in point twenty-seven, appellant alleges that the scheme is unconstitutional as applied in that the future dangerousness issue "does not encompass consideration of the act or conduct that formed the basis of conviction in any meaningful or standardized manner." Appellant combines all three of these points into one argument in which he basically alleges that the special issues do nothing "to insure that the sentencer's decision was not an act of unbridled discretion."

While he generally discusses each special issue, he never argues or provides authority as to why this makes the statute's operation unconstitutional *as applied to him.* As we stated above in point of error twelve, when challenging the constitutionality of a statute:

> [I]t is incumbent upon the defendant to show that in its operation the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient.

*Santikos v. State,* 836 S.W.2d 631, 633 (Tex. Crim.App.), *cert. denied,* 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992); *Parent v. State,* 621 S.W.2d 796, 797 (Tex.Crim.App. 1981). *See also Ulster County Court v. Allen,* 442 U.S. 140, 154–155, 99 S.Ct. 2213, 2223–24, 60 L.Ed.2d 777 (1979). Appellant has not done this. Hence, his point presents nothing for our review.[12] Tex.R.App. Proc. 74(f). *See Sonnier, supra.* Points of error twenty-five through twenty-seven are overruled.

Appellant asserts in point of error twenty-eight that his Eighth and Fourteenth Amendment rights were violated by the submission of "vague terms" in the first two special issues submitted in the punishment phase. Appellant's argument centers around the concept that "aggravating circumstances" must be adequately defined for the jury. However, nowhere does appellant tell us specifically which terms he alleges are inadequately defined in the special issues. In this regard, this point is inadequately briefed and presents nothing for our review. *Narvaiz v. State,* 840 S.W.2d 415, 431 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993); Tex.R.App. Proc. 74(f). We do note that on the penultimate page of his brief, appellant refers to the term, "continuing threat to society." This Court has repeatedly rejected the contention that terms such as this must be defined in

---

**12.** Notwithstanding appellant's inadequate briefing, we note that the United States Supreme Court stated in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), that as long as the class of murderers subject to capital punishment is narrowed, there is no constitutional infirmity in a procedure that allows a jury to recommend mercy based on the mitigating evidence introduced by a defendant. Texas law initially limits the class of murderers eligible for capital punishment to those convicted of murders involving special circumstances as described in Texas Penal Code § 19.03. The class is further limited in that the death penalty cannot be imposed on an individual convicted of capital murder unless the jury answers the special issues in the manner described in Article 37.071, Section 1, Code of Criminal Procedure. Furthermore, once the sentencer has found that the defendant is a member of the class made eligible for the death penalty, it may be given "unbridled discretion" in determining whether the death penalty should be imposed. *Tuilaepa v. California,* 512 U.S. 967, 979–80, 114 S.Ct. 2630, 2639, 129 L.Ed.2d 750 (1994).

the charge. *Garcia v. State,* 887 S.W.2d 846, 859 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). Appellant's twenty-eighth point is overruled.

■ In his twenty-ninth point of error, appellant alleges that the "juxtaposition of the terms 'reasonable doubt' and 'probability' unconstitutionally lowers the reasonable doubt quantum of proof." Appellant's basic argument is that the undefined "probability" in the future dangerousness issue invites juror confusion and is therefore unconstitutional. This allegation was addressed and answered by the United States Supreme Court in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), when it held that the Texas future dangerousness issue was not unconstitutionally vague. We will not revisit the issue here. Point of error twenty-nine is overruled.

Appellant asserts in his thirtieth point of error that the "12–10 rule" of Article 37.071 §§ 2(d)(2) and 2(f)(2) violates the Eighth Amendment to the United States Constitution. We have previously addressed and rejected this contention. *Rousseau v. State,* 855 S.W.2d 666 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Green v. State,* 912 S.W.2d 189, 193–94 (Tex.Crim.App.1995) *cert. denied,* —— U.S. ——, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996). In fact, while *Rousseau* actually addressed the pre–1991 version of the statute, we noted that the Interpretive Commentary to the revised 1991 statute, under which appellant was tried in the instant case, stated that the revisions foreclosed the potential for a challenge to the statute based upon *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), which is precisely the case appellant uses as his authority. *Rousseau,* 855 S.W.2d at 687, n. 26. Hence, appellant's point of error thirty is overruled.

■ In related point of error thirty-one, appellant avers that the trial court erred in denying his requested charge informing the jury that he would receive a life sentence should they fail to agree on the answer to any one of the punishment issues. Appellant alleges that this denial violated the Eighth Amendment. Appellant cites no authority for why he should have been entitled to such an instruction. As such, we note only that informing the jury of their failure to agree on the answer to a special issue is expressly forbidden by Article 37.071 § 2(a). This article is the substantial equivalent to the pre–1991 Article 37.071(g) which we have previously held to be constitutional on numerous occasions. *See Rousseau,* 855 S.W.2d at 686–87; *Felder v. State,* 848 S.W.2d 85, 101 (Tex. Crim.App.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Davis v. State,* 782 S.W.2d 211, 221–22 (Tex.Crim.App. 1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990). We hold that the same analysis applies to the new statute and appellant has given us no reason to revisit this issue. Point of error thirty-one is overruled.

■ In his thirty-second point of error, appellant alleges that the second special issue on punishment is facially unconstitutional in violation of the United States Supreme Court decision of *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). We first note that in reviewing the constitutionality of a statute, we must view the statute as applied to appellant only. *Santikos, supra; Dinkins v. State,* 894 S.W.2d 330, 340 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *McBride v. State,* 862 S.W.2d 600, 610–11 (Tex.Crim.App.1993), *cert. denied,* 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994). The second special issue submitted to the jury and of which appellant now complains reads in pertinent part as follows:

> [W]hether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

Appellant argues that the phrase "or anticipated that a human life would be taken" renders Article 37.071 § 2(b)(2) unconstitutional because the phrase lacks the required culpability. In support of his argument, appellant cites this Court to *Tison, supra,* and *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

Both *Tison* and *Enmund* were concerned with the implementation of the death penalty on defendants who were not proven to have an intent to kill. At the guilt/innocence phase of the instant case, the jury was specifically charged that they could not find appellant guilty of capital murder unless he intentionally murdered the victim or intentionally assisted in the commission of the murder *and* the aggravating offense. *See Webb v. State*, 760 S.W.2d 263, 268 (Tex. Crim.App.1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989); *Tucker v. State*, 771 S.W.2d 523, 530 (Tex. Crim.App.1988), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989). The jury's finding of guilt satisfied *Tison* and *Enmund. Webb*, 760 S.W.2d at 268; *Tucker*, 771 S.W.2d at 530. For purposes of the Eighth Amendment, at least, there was no need for further factfinding at the punishment phase of trial. Any facial unconstitutionality inhering in Article 37.071 § 2(b)(2) did not affect appellant. *See Lawton, supra.* Point of error thirty-two is overruled.

Appellant alleges in point thirty-three that the death penalty as presently administered in Texas is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, § 13 of the Texas Constitution. Appellant adopts Justice Blackmun's arguments in his dissenting opinion on the denial of certiorari in *Callins v. Collins*, 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994), in support of his argument that capital punishment is violative of the United States Constitution. Justice Blackmun's basic argument is that the capital sentencing procedures are unconstitutional because they are produced by paradoxical commands: allowing the jury to consider all types of relevant mitigating evidence, while, at the same time, requiring "structured discretion" in sentencing.

Appellant's reliance on Justice Blackmun's dissenting opinion is misplaced. As we set out previously, the Supreme Court recently held that, once the jury finds that the defendant falls within the legislatively defined category of persons *eligible* for the death penalty, the sentencer may be given "unbridled discretion" in determining whether the death penalty should be imposed. *Tuilaepa v. California*, 512 U.S. 967, 979–80, 114 S.Ct. 2630, 2639, 129 L.Ed.2d 750 (1994); *Anderson v. State, supra* at 508–09). *Moore v. State, supra* at 128, 128–09). This scheme does not create the paradoxical commands of concern to Justice Blackmun. Furthermore, our statutory scheme has not radically changed from the version upheld in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), except to incorporate the dictates of *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). As such, we hold that our capital murder scheme does not amount to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *See Lawton, supra; see also McFarland, supra.*

Appellant further remarks that this Court has said that it can and should interpret the Texas Constitution in a more expansive manner than the federal constitution and cites us to several cases for this proposition. *See Heitman, supra.* He then notes that the Texas Constitution proscribes "cruel *or* unusual punishments" while the Eighth Amendment prohibits "cruel *and* unusual punishments." However, we have previously held to the contrary, finding no significance in the difference between the Eighth Amendment's "cruel and unusual" phrasing and the "cruel *or* unusual" phrasing of Art. I, Sec. 13 of the Texas Constitution. *Anderson v. State, supra*, at 509–10. Point of error thirty-three is overruled.

In his thirty-fourth point of error, appellant complains that neither he nor his trial counsel was given the opportunity to enter a plea of "not guilty" to the jury; thus, he contends, his conviction is void *ab initio.* The record reveals that after the jury was selected, but prior to trial, appellant was arraigned outside the presence of the jury. During this arraignment, the State read the indictment, and the court asked appellant how he pled. Appellant's counsel responded, "Not guilty, Your Honor." After the jury was brought in the next day, the State read the indictment in their presence. Upon the completion of this reading, the trial court stated, "To which indictment, ladies and gen-

tlemen, the defendant has entered a plea of not guilty." Appellant's contention on appeal is that either he or his attorney should have actually voiced this plea to the jury.

Appellant bases his argument on several cases that stand for the proposition that an indictment must be read and a defendant's plea must be entered before a jury in order for the issue to be joined. *See Peltier v. State,* 626 S.W.2d 30 (Tex.Crim.App.1981); *Ex parte Sewell,* 742 S.W.2d 393 (Tex.Crim. App.1987); *Essary v. State,* 53 Tex.Crim. 596, 111 S.W. 927 (1908). However, none of these cases stand for the proposition that this plea must be made by appellant or his counsel, *personally.*

Article 27.16 states that:

The plea of not guilty may be made orally by the defendant or by his counsel in open court. If the defendant refuses to plead, the plea of not guilty shall be entered for him by the court.

Article 36.01, which governs the order of proceeding in trial, states in pertinent part:

1. The indictment or information shall be read to the jury by the attorney prosecuting.

2. The special pleas, if any, shall be read by the defendant's counsel, and if the plea of not guilty is also relied upon, it shall also be stated.

In appellant's arraignment in open court, but outside the presence of the jury, the State read the indictment and appellant's counsel entered appellant's plea of "not guilty." While the plain language of Article 36.01 indicates that an identical procedure *should* be followed in the jury's presence, it is not required by that language. *See Seale v. State,* 158 Tex.Crim. 440, 256 S.W.2d 86, 88 (1953); *Tutor v. State,* 599 S.W.2d 818, 819 (Tex.Crim.App.1980). We discern no harm to appellant in the present case by the trial court's statement that appellant had entered a plea of not guilty, and appellant has shown us none. Tex.R.App. Proc. 81(b)(2). As such, we hold that no error has been created by these events.

We also note that to preserve error for appellate review, assuming there was error, the party alleging error must have informed the trial court as to his complaint by making a timely objection so that the trial court was given an opportunity to rule on the complaint. *Johnson v. State,* 803 S.W.2d 272, 292 (Tex.Crim.App.1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991); Tex. Rule App. Proc. 52(a); *Janecka v. State,* 823 S.W.2d 232, 243–244 (Tex.Crim. App.1990).

The record shows appellant never objected to the Court's stating his plea before the jury instead of by himself or by his counsel. Appellant's claimed error could have been corrected easily if he had timely called it to the court's attention by making a contemporaneous objection. Accordingly, appellant waived any error by his failure to object to the procedure used by the trial court in its entering of his plea before the jury. Point of error thirty-four is overruled.

In his thirty-fifth point of error, appellant complains that the trial court erred in failing to give the jury instructions on the lesser-included offenses of murder, sexual assault, robbery, and kidnapping. In *Rousseau,* 855 S.W.2d at 673, we established a two-prong test to determine whether a defendant is entitled to a charge on a lesser included offense. We held:

[F]irst, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense.

[Emphasis in original.] It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted. *Bignall v. State,* 887 S.W.2d 21, 24 (Tex.Crim.App. 1994). Neither party disputes that murder, sexual assault, robbery, and kidnapping are lesser included offenses of capital murder for purposes of the instant case. Therefore, we hold the first prong is met as to each offense. Thus, we turn to an analysis of whether the

second prong of the test is met for any of the requested lesser included offenses.

For a rational jury to find that appellant was guilty *only* of sexual assault, robbery, or kidnapping, there must be some evidence in the record that appellant did not intend to kill the victim. However, no such evidence exists. As the evidence previously set out illustrates, appellant was the self-appointed leader of this "gang." His own statement to a co-defendant expressly showed that he intended that the girls be killed, and testimony as to appellant's actions revealed his active participation in the killings. A rational jury could not have found that appellant did not intend to kill the victim. Because the second prong of the *Rousseau* test was not met, appellant was not entitled to a charge on the lesser included offenses of sexual assault, robbery, or kidnapping.

 For a rational jury to find that appellant was guilty *only* of murder, some evidence must exist in the record that appellant did not commit sexual assault, robbery, or kidnapping or did not kill during the commission of or in the immediate flight from committing any of these offenses. Again the evidence belies this conclusion. Appellant's own statement, plus the testimony of other witnesses, elucidate appellant's full participation in each of these offenses. A rational jury could not have concluded otherwise. Hence, the second prong of *Rousseau* was not met in this instance either, and appellant was not entitled to a lesser-included charge of murder. Point of error thirty-five is overruled.

Appellant avers in his thirty-sixth point of error that the trial court violated his rights under the Eighth and Fourteenth Amendments by submitting an instruction concerning intoxication during the sentencing phase. Pursuant to Tex. Penal Code § 8.04, the trial court submitted the following instruction to the jury in the punishment charge:

> Evidence of the mental or physical incapacity of the defendant caused by voluntary intoxication may be introduced by the defendant in mitigation of the penalty attached to the offense for which he is being tried.

> Intoxication means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

> Mental or physical incapacity caused by intoxication means that the defendant's mental capacity was so disturbed from the introduction of a substance into his body that the defendant either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements [sic] of the law he allegedly violated.

> Therefore, if you find, or have a reasonable doubt thereof, that the defendant at the time of the commission of the offense for which he is on trial, was laboring under mental or physical incapacity caused by voluntary intoxication, then you may take such condition into consideration in mitigation of the penalty attached to the offense for which the defendant is being tried.

Appellant did not object to the inclusion of this instruction in the charge. Under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim. App.1984), the failure to object to an included charge waives all but egregious error. Hence, any error will only be reversible if it was so egregious and created such harm that appellant did not have a fair and impartial trial.

 Appellant alleges that the improper inclusion of the instruction rose to constitutional dimension because it informed the jury to consider evidence of intoxication in mitigation of the crime only if that evidence showed that the intoxication was so extreme as to cause appellant to be temporarily insane. Thus, he contends, evidence of intoxication which did not rise to this level was precluded from being afforded mitigating effect in violation of *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). However, appellant was also given the statutorily mandated mitigation instruction of Article 37.071 § 2(e) which provides the jury with just such a vehicle needed to consider and give effect to evidence such as evidence of intoxication which does not rise to the level of temporary insanity. We hold that the inclusion of the latter

instruction satisfied the constitutional deficiency appellant avers was created by the inclusion of the intoxication instruction. Thus, no *egregious* harm, if any harm at all, can be established. *See Tucker v. State,* 771 S.W.2d 523, 533–34 (Tex.Crim.App.1988), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989); *San Miguel v. State,* 864 S.W.2d 493, 495–96 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1337, 127 L.Ed.2d 685 (1994). Point of error thirty-six is overruled.

■ In points thirty-seven and thirty-eight, appellant complains that the admission of unadjudicated extraneous offenses during the sentencing phase violated Article 37.07 and the Eighth and Fourteenth Amendments to the United States Constitution. In his argument, appellant basically urges this Court to re-evaluate its prior holdings that Article 37.07 does not apply to capital cases and that the admission of unadjudicated extraneous offenses at the sentencing phase of a capital trial does not offend the Eighth and Fourteenth Amendments. This we decline to do. *Gentry v. State,* 770 S.W.2d 780 (Tex. Crim.App.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1013 (1989); *Harris v. State,* 827 S.W.2d 949, 962 (Tex. Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *Teague v. State,* 864 S.W.2d 505, 519 (Tex.Crim.App. 1993); *Adanandus v. State,* 866 S.W.2d 210, 234 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994); *Butler v. State,* 872 S.W.2d 227, 240 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); *McFarland, supra.* Points of error thirty-seven and thirty-eight are overruled.

In his thirty-ninth and fortieth points of error, appellant alleges that Article 44.251(a) is facially unconstitutional when taken together with Article 37.071 § 2(a) because the former requires a sufficiency review of the latter. However, he contends that a meaningful review of the mitigation issue is impossible. We have already decided these issues against appellant. *Green v. State,* 934 S.W.2d 92, 106, 107 (Tex.Crim.App.1996). *Lawton,* 913 S.W.2d at 557; *McFarland,* 928

S.W.2d at 497–99. Appellant's thirty-ninth and fortieth points of error are overruled.

■ Appellant asserts in his forty-first point of error that the Due Process Clause of the Fourteenth Amendment requires this Court to engage in proportionality reviews of death penalty cases. Both this Court in *Hughes,* 897 S.W.2d at 294, and the United States Supreme Court in *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), have held that such a review is not required under the Eighth or Fourteenth Amendments to the United States Constitution. *See also Morris v. State,* 940 S.W.2d 610, 615 (Tex.Crim.App.1996). We decline to revisit this issue here. Point of error forty-one is overruled.

Appellant again attacks the constitutionality of Article 37.071 § 2(e) in point of error forty-two alleging that it invites the open-ended discretion condemned by the United States Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). We have already addressed this issue and decided it adversely to appellant's position. *McFarland,* 928 S.W.2d at 520. Point of error forty-two is overruled.

■ In point of error forty-three, appellant contends that the definition of "mitigating evidence" in Article 37.071 § 2(f)(4) makes the article facially unconstitutional because it limits the concept of "mitigation" to "factors that render a capital defendant less morally 'blameworthy'" for the commission of the capital murder. Article 37.071 § 2(f)(4) "defines" "mitigating evidence" to be "evidence that a juror *might* regard as reducing the defendant's moral blameworthiness." (Emphasis added.) There is no evidence that must be viewed by a juror as being *per se* mitigating. Instead, jurors must individually determine what evidence, if any, mitigates against the imposition of the death penalty and what weight, if any, to give that evidence in its consideration. Article 37.071 § 2(e) yields further support to this interpretation in that it requires the court to instruct the jury to take into consideration "*all* of the evidence, *including* the circumstances of the offense, the defendant's character and background, *and* the personal mor-

al culpability of the defendant" (emphasis added) in determining whether sufficient mitigating circumstances exist to warrant a life sentence. Because the consideration and weighing of mitigating evidence is an open-ended, subjective determination engaged in by each individual juror, we conclude that Article 37.071 § 2(f)(4) does not unconstitutionally narrow the jury's discretion to factors concerning only moral blameworthiness as appellant alleges. *See Colella v. State*, 915 S.W.2d 834 (Tex.Crim.App.1995); *McFarland*, No. 71,557, slip op. at 49. Point of error forty-three is overruled.

Appellant contends in his forty-fourth point of error that Article 37.071 § 2(a),[13] which prohibits the judge and the parties from informing the jury of the effect of a failure of the jury to agree on their answers to the special issues, violates the Eighth and Fourteenth Amendments to the United States Constitution. Article 37.071 § 2(a) (as amended by the 1991 Legislature) is the same as the older Article 37.071(g) (Vernon 1990) with only minor changes. We have previously addressed and rejected constitutional challenges to prior Article 37.071(g) on numerous occasions. *Rousseau*, 855 S.W.2d at 686–87; *Felder*, 848 S.W.2d at 101; *Davis v. State*, 782 S.W.2d 211, 221–22 (Tex.Crim. App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990). *See also Green, supra.* We hold that the same analysis applies to the new statute and appellant has given us no reason to revisit this issue. Point of error forty-four is overruled.

In point of error forty-five, appellant claims that his death sentence should be overturned because racial discrimination continues to taint the Texas sentencing scheme in violation of the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment. Appellant's specific complaint seems to be racial discrimination based on the race of the victim in that he notes that appellant is Hispanic and the named victim was white. Appellant's argument is purely based on statistical studies

allegedly showing that, in Texas, the death penalty is more likely to be assessed when the victim is white than when the victim is a member of a racial minority. This argument has been addressed and rejected by both this Court and the United States Supreme Court and we will not revisit it here. *Robinson v. State*, 851 S.W.2d 216, 232 (Tex.Crim.App. 1991), *cert. denied*, 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Point of error forty-five is overruled.

Finding no reversible error, we affirm the judgment of the trial court.

KELLER, J., concurs in the result on point of error eight and joins in the remainder of the opinion.

WOMACK, J., concurs in the result on points of error five and eight and joins in the remainder of the opinion.

OVERSTREET, Judge, concurring and dissenting.

I dissent to the majority's discussion in disposing of appellant's point of error number five regarding the "nexus" jury argument. The records clearly show that such jury argument was not a summation of the evidence, a reasonable deduction from the evidence, an answer to opposing counsel's jury argument, nor a plea for law enforcement. The law as to mitigation and otherwise comes from the jury charge rather than from argument of counsel. Nevertheless, in light of Tex.R.App.Pro. 81(b)(2) I concur in overruling the point.

I also dissent to the discussion of points one through four involving not allowing the jury to be informed that if sentenced to life appellant was statutorily mandatorily required to serve 35 years in prison before becoming eligible for parole. Points one and two claim constitutional error in the trial court denying his requested punishment jury charge instruction informing the jury that pursuant to Article 42.18, § 8(b)(2),

---

13. The pertinent part of Article 37.071 § 2(a) reads:

The court, the attorney representing the state, the defendant, or the defendant's counsel may

not inform a juror or a prospective juror of the effect of a failure of a jury to agree on issues submitted under Subsection (c) or (e) of this article.

V.A.C.C.P., a prisoner serving a life sentence for capital murder is not parole eligible until the actual calendar time served, without consideration of good conduct time, equals 35 calendar years. Point three claims reversible error in precluding him from presenting testimony about that parole eligibility requirement. Point four likewise claims reversible error in denying him the right to question prospective jurors about their ability to consider the 35–year minimum calendar years he would have to serve on a life sentence before becoming parole eligible.

These complaints occurred at punishment, and thus had no effect upon guilt/innocence. I continue to voice my disagreement with the majority's continued refusal to acknowledge the constitutional infirmities in depriving the jury of information relevant to the special issues as to the statutorily required mandatory serving of 35 calendar years before becoming eligible for parole on a life sentence for capital murder. For the reasons stated in my dissents in *Rhoades v. State,* 934 S.W.2d 113 (Tex.Cr.App.1996); *Anderson v. State,* 932 S.W.2d 502 (Tex.Cr.App.1996), and *Morris v. State,* 940 S.W.2d 610 (Tex.Cr.App. 1996), I dissent to the majority's treatment and discussion of points one through four.

Additionally, in this case, I point out that appellant elicited testimony from an expert witness about studies indicating that the defendant who serves 35 calendar years in the Texas Department of Corrections before becoming parole eligible is less violent than the inmate who is paroled sooner; i.e. "the probability of subsequent activity would be low." He even opined that in a situation of 70 years before parole eligibility, there would be no probability because he suspected that the individual would be dead by then. The State then cross-examined this witness about several death row prisoners committing subsequent violent crimes, and two, including the infamous and notorious Kenneth McDuff, getting out on parole and committing murders. The State mentioned the 35–year period that defense counsel had talked about and asked the witness about the jury's concerns being not about what's going to happen 35 years from now but rather "what's going to happen in the next day, the next week, the next month, the next year." In light of that questioning mentioning situations of capital murder defendants, including Kenneth McDuff, being paroled and committing murders, it was even more critical that the jury be informed of the law, i.e. the Art. 42.18, § 8(b)(2), V.A.C.C.P., provision requiring a prisoner serving a life sentence for capital murder to serve 35 calendar years, without consideration of good conduct time, before becoming eligible for parole. The vague references to 35 years in questioning the above-discussed witness were certainly not sufficient to inform the jury of the law. The law should be provided by the trial court in the jury charge, not by questioning the witnesses. *See,* Article 36.14, V.A.C.C.P.—The trial court shall deliver to the jury "a written charge distinctly *setting forth the law applicable to the case* [.]" (emphasis added).

Nevertheless, such error is subject to a harm analysis. *See, Broxton v. State,* 909 S.W.2d 912, 923 n. 3 (Tex.Cr.App.1995) (Overstreet, J., dissenting). In light of the record as a whole, the error in precluding the jury from being informed about the parole ineligibility provision was no doubt harmless. Accordingly, I continue to dissent to the majority's continued analysis of this issue and treatment of points one through four, but concur in the result.