IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




NO. PD-1531-03






KIMBERLY HALEY, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY





 Keasler, J., delivered the opinion of the Court in which Price, Womack,
Johnson, Hervey, Holcomb, and Cochran, JJ., joined. Keller, P.J., filed a
concurring opinion. Meyers, J., did not participate.


O P I N I O N 



 In the punishment phase of Kimberly Haley's cocaine possession trial, the State
introduced evidence of Haley's participation in an extraneous murder offense and testimony
of the murder victim's mother. Holding the evidence "insufficient" to find Haley guilty
beyond a reasonable doubt of the murder, the Court of Appeals found error. The court also
found error in the admission of the mother's testimony. We find error only in admitting the
victim's mother's testimony and affirm the court's judgment.


I. Facts

 Kimberly Haley was charged by indictment with the offense of possession of a
controlled substance with intent to deliver cocaine in the amount of four grams or more but
less than 200 grams. Haley was tried in a joint trial with co-defendant Kristofer Marsh, who
faced the same indicted offense after being previously convicted of the unrelated murder of
Michael Adelman. After the jury found Haley guilty as charged in the indictment, the State
introduced punishment evidence describing Haley's involvement in Adelman's murder. 
Because this appeal centers on the admission of this evidence, a brief summary of the
admitted testimony is appropriate. Testimony in the punishment phase revealed the
following:

 On October 5, 2000, Haley and her friend Ronnie Maxwell were drinking and dancing
at a club located in downtown Austin. While they were dancing, Michael Adelman
approached and proceeded to dance with them. Haley was offended by Adelman's persistent
touching while they danced, and proceeded to call her boyfriend, co-defendant Kristopher
Marsh, to tell him about the incident. After Marsh arrived at the club, Haley grabbed
Adelman's nipple as he walked by and stated "We are going to start some s--t." Adelman
laughed and pushed Haley's hand away. 

 When Adelman and his friends left the bar, Haley, Marsh, and Maxwell followed
Adelman in Marsh's vehicle. They followed the vehicle until it stopped at Adelman's
apartment complex. Armed with a bat, Marsh quickly exited his vehicle and ran towards
Adelman. Haley immediately moved to the driver's seat, turned the lights off, and reversed
the vehicle. Marsh approached from behind as Adelman was directing a friend into a parking
space and struck him several times with a bat. Marsh also struck the driver's side window
where Adelman's friend was sitting, shattering the glass throughout the car. Haley quickly
drove towards Marsh, who jumped into the car, and sped away. In the car after the attack,
Marsh laughed as he told them that "[t]here is no way he is getting up" after he "kept hitting
him and hitting him." Haley kissed and praised Marsh by saying, "You finally did it." After
five days in intensive care, Michael Adelman was pronounced brain dead. Adelman's
mother, Arleen Adelman testified to her family's suffering, Michael's treatment, and the
family's decision to donate his organs. 

 Upon the close of evidence, the trial court charged the jury on extraneous offense and
bad acts evidence. The charge stated that the jury "cannot consider such acts or transactions,
if any, unless you first find and believe beyond a reasonable doubt that the defendant
committed such acts or participated in such transactions...." The instructions did not contain
a charge on the law of parties. The jury assessed both defendants' punishment at
confinement for sixty-five years. 

II. Court of Appeals

 After reviewing the State's punishment evidence, the Court of Appeals held that "[t]he
evidence shows that appellant's co-defendant Marsh murdered Michael Adelman; appellant
could only be criminally responsible for Adelman's murder if the evidence showed beyond
a reasonable doubt her guilt as a party to that offense." (1) Concluding the evidence was
insufficient to prove Haley's guilt as a party beyond a reasonable doubt, the court found the
trial court abused its discretion in admitting this punishment evidence. (2) 

 The Court of Appeals also found error in the trial court's failure to include a definition
of the law of parties in its charge to the jury. (3) The court held that the jury must first find
Haley guilty beyond a reasonable doubt of committing Adelman's murder as a party before
it could give any consideration to this evidence in assessing Haley's punishment. (4) Therefore,
the court reasoned, without a law-of-parties definition, the trial court condoned the jury's use
of this punishment evidence without a key component necessary in finding criminal liability. (5) 
The court went on to say that contrary to Texas Penal Code section 7.02 and this state's
precedent on criminal party liability, the instruction permitted the jury to 

 believe[] that appellant's presence at the scene of the crime and fleeing from
the scene with Marsh was sufficient "participation" in the offense for the jury
to consider the evidence in assessing appellant's punishment. Appellant's
presence at the scene and flight therefrom with Marsh would not be sufficient
to make appellant a party to the offense." (6) 

 

 The court then conducted an egregious-harm analysis where it found this error
deprived Haley of a fair and impartial trial. (7) The court held the error in submitting evidence
of the Adelman murder and the error in the jury instructions entitled Haley to a new
punishment trial.

 Additionally, the court found error in the admission of victim-impact testimony
proffered by Arleen Adelman. (8) Relying on this Court's opinion in Cantu v. State, (9) the court
held it was error to admit victim-impact evidence relating to the extraneous offense of
murder because Haley was charged only with possession of cocaine and the indictment did
not contain a named victim. (10) After reviewing the State's closing arguments and the record
as a whole, the court concluded that the arguments "stressed and overemphasized" this
evidence in justifying a severe punishment which substantially affected and influenced the
jury's punishment assessment. (11) We granted the State's petition for discretionary review in
light of these holdings. 

III. Analysis

A. Evidence Admissibility

 Texas Code of Criminal Procedure article 37.07 § 3(a) is one of the guiding principles
governing the admissibility of evidence at the punishment phase of a trial. (12) Article 37.07
§ 3(a) states in relevant part:

 [E]vidence may be offered by the state and the defendant as to any matters the
court deems relevant to sentencing including but not limited to ... evidence of
an extraneous crime or bad act that is shown beyond a reasonable doubt by
evidence to have been committed by the defendant or for which he could be
held criminally responsible, regardless of whether he has previously been
charged with or finally convicted of the crime or act. (13)


 The State argues that the Court of Appeals erred in finding error in admitting this
evidence by failing to review this evidence under a "bad act" theory of admissibility. Haley
responds to the State's ground of review by contending this theory of admissibility was never
presented to the Court of Appeals, and therefore is not properly before this Court. While the
State never expressly advanced the bad act theory in its brief before the lower court and a
detailed analysis is not found in its decision, the Court of Appeals nevertheless implicitly
decided this issue in its resolution of this case. (14) By holding that the only way the jury could
consider this evidence under article 37.07 in assessing punishment was to first find Haley
guilty beyond reasonable doubt for Adelman's murder, the Court of Appeals rejected the
argument that this evidence could be admissible as a bad act. (15) Therefore, this implicit
holding is a decision of the Court of Appeals and the State's argument warrants review.

 The Court of Appeals held that the evidence is insufficient to prove beyond a
reasonable doubt that Haley was guilty as a party to the offense of Adelman's murder;
therefore the trial court abused its discretion in admitting and permitting the jury to consider
this evidence in assessing Haley's punishment. The Court of Appeals misreads article 37.07
§ 3(a). And as a result, the court mis-characterizes the purpose of character evidence. 

 When determining the admissibility of evidence under article 37.07, a court must be
guided by the language of its provisions. (16) We look solely to the statute's plain language for
its meaning unless its text is ambiguous or the application of its plain language would lead
to an absurd result that the Legislature could not have possibly intended. (17) Article 37.07 §
3(a)' s language cannot be labeled ambiguous, nor does the plain-language application lead
to absurd results unintended by the Legislature. 

 We have held this provision's unambiguous wording to mean, for purposes of
assessing punishment, that the prosecution may offer evidence of any extraneous crime or
bad act that is shown, beyond a reasonable doubt, either to have been (1) an act committed
by the defendant or (2) an act for which he could be held criminally responsible. (18) For
purposes of this case, several principles are apparent from article 37.07 § 3(a)'s text. First,
§ 3(a) does not contemplate any significant distinction between the terms "bad act" or
"extraneous offense." The statute expressly states "evidence of an extraneous crime or bad
act ... to have been committed by the defendant or for which he could be held criminally
responsible." (19) Under this statute, it is irrelevant whether the conduct the offering party is
attempting to prove is, or can be characterized, as an offense under the Texas Penal Code. 
The inclusion of acts rising to the level of criminal responsibility and acts appropriately
labeled "bad" in the statute's language make it clear that the act's nomenclature does not
place each on a separate path towards admissibility. 

 Second, the statutorily imposed burden of proof beyond a reasonable doubt does not
require the offering party to necessarily prove that the act was a criminal act or that the
defendant committed a crime. Before the jury can consider this evidence in assessing
punishment, it must be satisfied beyond a reasonable doubt that the acts are attributable to
the defendant. (20) We interpret the statute to require the burden of proof to be applied to a
defendant's involvement in the act itself, instead of the elements of a crime necessary for a
finding of guilt. (21) 

 Third, the statute's plain language is in harmony with the nature and general
characteristics of punishment evidence. By holding that a jury must find Haley guilty of
murder as a party to the offense, the Court of Appeals equates the role of punishment
evidence with evidence proffered in the guilt-innocence phase. Unlike the guilt-innocence
phase, the question at punishment is not whether the defendant has committed a crime, but
instead what sentence should be assessed. (22) Whereas the guilt-innocence stage requires the
jury to find the defendant guilty beyond a reasonable doubt of each element of the offense,
the punishment phase requires the jury only find that these prior acts are attributable to the
defendant beyond a reasonable doubt. (23) 

 Therefore, we conclude the Court of Appeals erred in holding (1) that the evidence
must first show that Haley is guilty of murder in connection with Adelman's death and (2)
that Haley's guilt must be shown beyond a reasonable doubt. Because we have held that the
Court of Appeals applied an incorrect theory of law, we need not address the State's related
points of error concerning whether the trial court must include the law of parties in the jury
instructions sua sponte or whether the Court of Appeals applied the proper harm analysis. 

B. Victim Impact Testimony

Preservation of Error

 Before we address the merits of the Court of Appeals's holding on finding error in the
introduction of Adelman's testimony, we must address the State's contention that the lower
court erred in addressing this issue when it was not properly preserved for review. Because
we have held that preservation of error is a systemic requirement that must be reviewed by
the courts of appeals regardless of whether the issue is raised by the parties, our inquiry into
whether Haley properly preserved this alleged error is appropriate. (24) 

 After the State elicited Adelman's name, her occupation, her son's name, age and
occupation, the following bench conference took place:

 MR. FLOREY [Marsh's attorney]: We were told we weren't going to get into victim
impact. I thought she was up here just to say that was her son.


 MR. KEEL [Haley's attorney]: To identify him for 37.07. Where are we going with
this?


 THE COURT: Everything is proper. If you have an objection, just state it and I will
rule.


 MR. KEEL: I object that none of this is relevant for the record.


 THE COURT: Overruled.


 MR. FLOREY: Note my same objection.


 THE COURT: Overrruled.


 MR. FLOREY: Ask for a 403 balancing.


 THE COURT: Overruled.

 At the conclusion of Adelman's testimony, the Court granted a short recess during
which resulted in the following bench conference:

 MR. KEEL: I just want to make the record clear that I had a clear understanding
from the Court after I made my relevance objection as to that last witness that the
Court would not entertain any further objections to that witness. I hope the Court will
agree with me on that and the record will reflect that.


 THE COURT: I didn't mind you objecting.


 . . .


 MR. KEEL: I did. I made a relevance objection.


 THE COURT: You did. I overruled it.


 MR. KEEL: I want the record to reflect that the witness testified beyond what my
understanding the Court would allow that particular witness to testify to, including
inadmissible victim impact testimony concerning the homicide of Mike Adelman
when we are in punishment phase of my defendant's narcotics case. Furthermore, the
Court, it was my understanding, did not wish to entertain any further objections after
the initial relevance objection. When the testimony began, it was not only irrelevant
but interspersed with hearsay and frequently based upon graphic and prejudicial
matters that were totally irrelevant and I object. I am asking the Court to instruct the
jury to disregard those matters.


 THE COURT: The instruction to disregard is denied. You join in that objection?


 MR. FLOREY: I join in that and ask for your ruling.


 THE COURT: Instruction to disregard is denied.


 . . .


 MR. FLOREY: One other thing, your Honor. When we were up here before, did I
understand and did we have a running objection to all of her testimony when we were
here earlier on the bench?

 

 THE COURT: You didn't because you didn't ask for it. I just said make your
objection. I wanted y'all to object out there to whatever she said that was
objectionable. 


 Preservation of error for appellate review under Texas Rule of Appellate Procedure
33 requires that the record demonstrate (1) the complaining party made a timely and specific
request, objection, or motion; and (2) the trial judge either ruled on the request, objection,
or motion, or he refused to rule and the complaining party objected to that refusal. (25) We have
held that an objection must be timely, specific, pursued to an adverse ruling, and must be
made each time inadmissible evidence is offered. (26) But two exceptions apply to the
requirement of subsequent objections: counsel may obtain a running objection or request a
hearing outside the presence of the jury. (27) 

 While it is clear from the record that Haley's counsel did not obtain a running
objection, we find that the bench conference was a hearing outside the presence of the jury
and satisfied Texas Rule of Evidence 103(a). Rule 103(a) provides, in part, "[w]hen the
court hears objections to offered evidence out of the presence of the jury and rules that such
evidence be admitted, such objections shall be deemed to apply to such evidence when it is
admitted before the jury without the necessity of repeating those objections." Therefore, we
find Haley properly preserved this alleged error in the trial court and the Court of Appeals
was correct in addressing whether the trial court erred in admitting this testimony.

Victim-Impact Admissibility

 In Mosley v. State, we discussed the meaning and distinctions between "victim-impact" and "victim-character" evidence. (28) Victim-impact evidence is evidence concerning
the effect the victim's death will have on others, particularly the victim's family members;
whereas victim-character evidence is defined as evidence concerning the good qualities of
the victim. (29) A review of Adelman's testimony reveals both the victim-impact and victim-character nature of her testimony. On direct examination, Adelman testified to the emotional
impact her son's hospitalization and subsequent death had on her family. She recalled her
shock in seeing her son lying in the hospital bed "with many plugs and tubes and everything
imaginable." Adelman further testified to her family's time spent bedside at the hospital:

 There were friends there all the time. We were only allowed to go in once
every hour or set times that we could go in. We had to keep the activity down
because it seemed like a lot of his friends would want to come in and talk to
him and there was a lot of crying going on and we would watch the gauge and
it would move his cranial pressure. So we were told to keep kind of quiet. But
we were praying. We had priests there. We had a lot of people going in and
out. 

After detailing how the family was informed of Michael's worsening condition, Adelman
spoke of the family's decision to donate her son's organs pursuant to his wishes. She
indicated that "[i]t was a hard decision, but we knew that's what Mike would have done. 
Mike would have done anything for his friends or his family. He was that type of person."

 Victim-impact evidence or testimony generally may be admissible at the punishment
phase when that evidence has some bearing on the defendant's personal responsibility and
moral culpability. (30) But the introduction of victim-impact evidence is limited even further
when a party attempts to introduce this evidence concerning a victim of an extraneous
offense and one not named in the indictment.

 Like the Court of Appeals, we find our opinion in Cantu v. State (31) instructive in the
present case. In Cantu v. State, the appellant was charged with the offense of capital murder
for killing a person in the course of committing or attempting to commit robbery, kidnapping,
and aggravated sexual assault. (32) In the punishment phase, the State offered the testimony of
the mother of another victim killed during the same episode that resulted in the death of the
victim included in the indictment. (33) Over appellant's objection, the trial court permitted the
mother to testify about her daughter's good character, the search for her daughter, and the
impact her disappearance had on the rest of the family members. This Court held "[t]he
danger of unfair prejudice to a defendant inherent in the introduction of 'victim impact'
evidence with respect to a victim not named in the indictment on which he is being tried is
unacceptably high." (34) While the Cantu Court noted that "[e]xtraneous victim impact
evidence, if anything, is more prejudicial than the non-extraneous victim impact evidence
found by this Court to be inadmissible in [previous cases]," the Court's central holding was
that such evidence was irrelevant under Texas Rule of Evidence 401. (35) We hold similarly
here. 

 The Court of Appeals correctly noted that Haley faced an indictment that did not
identify a victim and charged only the offense of possession of cocaine with the intent to
deliver. Adelman's testimony in the form of victim-impact and victim-character testimony
regarding an extraneous offense or bad act was irrelevant under Rule 401 to the
determination of the appropriate sentence Haley should receive on the facts of this case. (36) 
We agree with the lower court's holding that the trial court erred in admitting victim-impact
evidence relating to the extraneous offense of murder in the punishment phase of Haley's
cocaine possession trial. 

 We further agree with the Court of Appeals's analysis in finding that the erroneous
introduction of Adelman's testimony had a substantial effect on the jury's verdict. Pursuant
to Texas Rule of Appellate Procedure 44.2(b), any non-constitutional error that does not
affect appellant's substantial rights must be disregarded. (37) A substantial right is affected
when the error had a substantial and injurious effect or influence in determining the jury's
verdict. (38) In assessing the likelihood that the jury's decision was adversely affected by the
error, an appellate court should consider everything in the record, including any testimony
or physical evidence admitted for the jury's consideration, the nature of the evidence
supporting the verdict, the character of the alleged error and how it might be considered in
connection with other evidence in the case. (39) The reviewing court may also consider the jury
instructions, the State's theory and any defensive theories, closing arguments, voir dire and
whether the State emphasized the error. (40)

 After conducting our own review of the entire record, we conclude that the Court of
Appeals correctly analyzed the alleged harm. The court's finding that the jury's verdict was
substantially affected and influenced by the erroneously admitted evidence is both reasonable
and supported by the record. We agree that the State's extended argument concerning the
suffering Michael Adelman's family endured had a substantial effect and influence on the
jury's punishment assessment. The record clearly shows that the Adelman family's pain was
a prominent piece of the State's argument for a weighty sentence. In this case, we cannot
relegate the pervasive and emotional characteristics of this impermissible testimony,
especially the manner in which it was used, to the benign category of harmless error.

IV. Conclusion

 The Court of Appeals erred in finding error in the admission of evidence detailing
Haley's involvement in the murder of Michael Adelman. However, we affirm the Court of
Appeals's holding that the victim-impact testimony was improperly admitted and
substantially affected the jury's verdict. Therefore, the Court of Appeals's remand to the trial
court for a new trial on the punishment phase is affirmed. 

DATE DELIVERED: October 5, 2005

PUBLISH

1. Haley v. State, 113 S.W.3d 801, 813 (Tex. App.--Austin 2003). 
2. Id.
3. Id. at 814.
4. Id.
5. Id.
6. Id.
7. Id. at 815. 
8. Id. at 818.
9. Cantu v. State, 939 S.W.2d 627 (Tex. Crim. App. 1997).
10. Haley, 113 S.W.3d at 818.
11. Id. at 819.
12. Sunbury v. State, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002).
13. Tex. Crim. Proc. Code Ann. art. 37.07 § 3(a) (Vernon 2004).
14. See Crittenden v. State, 899 S.W.2d 668, 670 n.2 (Tex. Crim. App. 1995); Lee v.
State, 791 S.W.2d 141, 142 (Tex. Crim. App. 1990).
15. See Lee, 791 S.W.2d at 142.
16. Jaubert v. State, 74 S.W.3d 1, 2 (Tex. Crim. App. 2002); see Boykin v. State, 818
S.W.2d 782, 785 (Tex. Crim. App. 1991).
17. Id.
18. Fields v. State, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999).
19. Tex. Crim. Proc. Code Ann. art. 37.07 § 3(a) (Vernon 2004).
20. Huizar v. State, 12 S.W.3d 479, 482-83 (Tex. Crim. App. 2000); Fields, 1 S.W.3d
at 688; see id. 
21. See id.
22. Sunbury v. State, 88 S.W.3d 229, 234 (Tex. Crim. App. 2002); Rogers v. State, 991
S.W.2d 263, 265 (Tex. Crim. App. 1999).
23. Fields, 1 S.W.3d at 688.
24. See Martinez v. State, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000) (citing Hughes
v. State, 878 S.W.2d 142, 151 (Tex. Crim. App. 1992) (op. on reh'g)).
25. Tex. R. App. Pro. 33.1(a); Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App.
2003).
26. Geuder, 115 S.W.3d at 13; Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App.
2003).
27. Id. 
28. 983 S.W.2d 249, 261 (Tex. Crim. App. 1998).
29. Id.; see also Mathis v. State, 67 S.W.3d 918, 928 (Tex. Crim. App. 2002). 
30. Salazar v. State, 90 S.W.3d 330, 335 (Tex. Crim. App. 2003).
31. 939 S.W.2d 627 (Tex. Crim. App. 1997).
32. Id. at 630.
33. Id. at 636.
34. Id. at 637.
35. Id.
36. See id.; see also Sunbury, 88 S.W.3d at 234 (stating relevance should be a question
of what is helpful to the jury in determining the appropriate sentence for a particular
defendant in a particular case). 
37. Tex. R. App. P. 44.2(b).
38. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).
39. Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).
40. Id. at 355-56.