Affirmed and Memorandum Opinion
filed February 24, 2011.

 

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-01087-CR



Calvin Moore, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 174th District Court

Harris County, Texas

Trial Court
Cause No. 1175640



 

MEMORANDUM OPINION

A jury convicted appellant Calvin Moore of aggravated
robbery and assessed punishment at sixty years’ confinement in the Texas
Department of Criminal Justice, Institutional Division and a $10,000 fine.  In three
issues, appellant challenges his conviction and sentence based on legally and
factually insufficient evidence to support his conviction, improper jury
argument by the State during punishment, and erroneous admission of evidence
during punishment.  We affirm.  

Background

The complainant, Martin Okonzak, went to an adult
video store around midnight on July 16, 2008.  Okonzak was in the store for
about 30 minutes.  After he left the store, he was sitting in his car when
Stephanie Jones approached him.  Okonzak agreed to pay Jones $20 to engage in
sexual acts with him.  Jones got in Okonzak’s car and they left.  Jones told
Okonzak that she knew someone who had a room they could use and directed him to
the Haverstock Hill apartment complex.  Okonzak drove through the gate and
around the back of the front building and parked.  Jones said the room would
cost $20.  Okonzak gave Jones $20 and she got out of car.  Jones returned after
about 10 minutes, got in the car, and said, “Let’s go to the room.”  

At this time, appellant and Clifton Davis approached
the driver’s side of the car.  Okonzak’s window was cracked and appellant
“stuck a gun in [Okonzak’s] face.”  Okonzak grabbed the gun and tried to get it
away from appellant.  Okonzak was also trying to fight off Jones.  When Okonzak
could not get the gun away from appellant, he let go of the gun “hoping they
wouldn’t do anything to [him].”  Appellant shot Okonzak three times.  Okonzak
received gunshot wounds to his right thigh, the back of his head, and one of
his fingers.  Okonzak did not immediately realize that he had been shot. 
Appellant and Davis wanted Okonzak’s money, and he gave them $200 or $250. 
Jones had gotten out of the car and left.  Appellant and Davis left after
Okonzak gave them the money.  

When Okonzak tried to drive away, he noticed that the
keys were not in the ignition.  Okonzak noticed a male standing in front of the
car on the sidewalk and yelled to him for the keys.  The male threw the keys on
the ground next to the car.  Okonzak drove away the same way he had come in. 
Deputy Frank Donalson of the Harris County Sheriff’s Department was driving
into the gate of the apartment complex when he saw Okonzak driving erratically,
without the lights on and the driver’s door slightly open.  Okonzak drove
through the exit gate, made a U-turn, and stopped.  When Deputy Donalson
approached the car, he observed blood on the outside of the car and inside the
car.  Deputy Donalson called for an ambulance.

Deputy Donalson was able to interview Okonzak.  Okonzak
told Deputy Donalson that he had picked up a prostitute at a nearby adult bookstore,
and she directed him to that apartment complex.  The prostitute left the car to
get a room and came back a short time later.  Two black males approached the
car.  The prostitute told him to open the door.  When one of the males produced
a handgun, Okonzak grabbed the gun and told the suspects “I’ll just give you
the money, just leave me alone.”  The suspect with the gun said, “Okay.  That’s
fine.”  Okonzak let go of the gun and took $200 out of his pocket and gave it
to the suspect.  When the suspect demanded additional money, Okonzak told him
he did not have any more money and pulled out his wallet to show him.  The suspect
with the gun said he was “going to shoot” and fired one round that struck
Okonzak in the leg.  The suspect then said, “I’m going to kill you” and fired
more rounds from the gun.  Okonzak was not able to give Deputy Donalson a
description of the suspect.  

Deputy Maurice Carpenter of the Crime Scene Unit of
the Sheriff’s Department investigated the scene at the rear of the apartment
complex.  Deputy Carpenter found a piece of glass lying on the pavement that
looked like a window from Okonzak’s car.  The window, which was in one large
piece, was shattered and held together by the tinting.  There was a hole in the
lower front portion of the window that was consistent with being caused by a
bullet.  Deputy Carpenter also observed blood stains on the pavement by the
window.  There were street lights and security lights.  

Deputy Carpenter decided to have Okonzak’s car towed
to the Sheriff’s Department’s processing facility.  Deputy Carpenter found a
bullet in the driver’s seat and sent it to the firearms laboratory for
analysis.  Deputy Carpenter determined that the trajectory of the bullet was from
the passenger side of the vehicle traveling from the left and downward at a forty-five
degree angle.  The bullet’s direction of travel was consistent with Okonzak’s
being shot from the passenger side of the car.

Deputy Carpenter also found fingerprints on the
interior passenger side window, the exterior of the windshield, and the passenger
side and driver side of the roof of the car.  Carpenter entered the
fingerprints into a computer database.  The computer is set to return twenty
respondents that were most likely to match the prints he entered.  Deputy
Carpenter individually compared each respondent to the prints he had entered
into the system until he was able to make an identification.  Deputy Carpenter
matched the prints to appellant, Stephanie Jones, and Clifton Davis.  

The fingerprints that were lifted from the roof on
the passenger side of the car matched appellant’s left ring and little fingers. 
Deputy Carpenter fingerprinted appellant and confirmed that appellant’s prints
were the ones he had lifted from Okonzak’s car.  Deputy Steven Davis, a senior
crime scene investigator, reviewed Deputy Carpenter’s findings and agreed with
his opinion

Deputy Zachary Long of the Homicide Robbery Division
was assigned to do the follow-up investigation.  Appellant, Jones, and Davis
had been developed as suspects based on their fingerprints.  Deputy Long
constructed a photospread for each suspect, along with five other people of
similar characteristics.  On July 21, 2008, Deputy Long presented the
photospreads to Okonzak at his home.  Okonzak identified appellant, Jones, and
Davis.  Okonzak further identified appellant as the one who had the gun.  

During the punishment phase of the trial, the State
presented evidence that appellant had been convicted of possession of
marijuana, assault on a family member, unlawful carrying of a weapon, evading
arrest, terroristic threat, criminal trespass on three occasions, and failing
to identify himself to a police officer on two occasions.  Appellant’s
disciplinary records from the Harris County Jail were also admitted into
evidence, showing that appellant had been disciplined for threatening someone,
interfering with count, and refusing to obey an order on three occasions.  

The State also presented evidence of a murder
committed by appellant on August 17, 2008, while he was wanted on the
aggravated robbery charge in this case.  Patrick Oliphant and Kelsey Kirkendall
testified that they had driven from Huntsville to attend a birthday party for
Calib Cooper at a nightclub in Houston.  William Bius was also at that party.  They
left the club when it closed, and were going to an “after-party” at Cooper’s
apartment.  William rode with Oliphant and Kirkendall.  After they became lost
trying to find Cooper’s place, they decided to return to Huntsville.  

Shortly after driving onto Interstate 45 North,
Kirkendall, who was driving, stopped at a gas station so that she could put gas
in the car, and Oliphant and William could use the restroom.  William
approached a group of males to purchase cocaine.  William brought appellant
back to the car and asked Kirkendall if she would give appellant a ride. 
Kirkendall agreed, and appellant directed her to a nearby apartment complex. 
After parking the car at the apartment complex, appellant got out of the car,
walked to another car, and retrieved an object.  Appellant told Kirkendall,
Oliphant, and William that “It’s a setup, we’re being surrounded by cops.”  Appellant
then pulled out a gun and shot William in the head.  Kirkendall drove to a
nearby gas station and called 911.  William later died at the hospital as a
result of a gunshot wound to his head.  

The jury found appellant guilty of aggravated robbery
and assessed punishment at sixty years’ imprisonment and a $10,000 fine.  This
appealed followed.  

Sufficiency of the Evidence

In his first issue, appellant challenges the legal
and factual sufficiency of the evidence supporting his conviction.  While this
appeal was pending, the Court of Criminal Appeals held that only one standard
should be used to evaluate the sufficiency of the evidence in a criminal case:
legal sufficiency.  Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim.
App. 2010) (plurality opinion); id. at 926 (Cochran, J., concurring). 
Accordingly, we review the sufficiency of the evidence in this case under a
rigorous and proper application of the Jackson v. Virginia, 443 U.S. 307
(1979), legal sufficiency standard.  Brooks, 323 S.W.3d at 906
(plurality opinion).  

When reviewing the sufficiency of the evidence, we
view all of the evidence in the light most favorable to the verdict to
determine whether the jury was rationally justified in finding guilt beyond a
reasonable doubt.  Isassi v. State, No. PD-1347-09, — S.W.3d —, 2010 WL
3894792, at *3 (Tex. Crim. App. Oct. 6, 2010); Williams v. State, 235
S.W.3d 742, 750 (Tex. Crim. App. 2007).  This court does not sit as a
thirteenth juror and may not substitute its judgment for that of the fact
finder by re-evaluating the weight and credibility of the evidence.  Isassi,
2010 WL 3894792, at *3; Williams, 235 S.W.3d at 750.  Instead, we defer
to the fact finder’s responsibility to fairly resolve conflicts in the testimony,
to weigh the evidence, and to draw reasonable inferences from the facts.  Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Our duty as a
reviewing court is to ensure that the evidence presented actually supports a
conclusion that the defendant committed the crime.  Williams, 235 S.W.3d
at 750.  

A person commits the offense of robbery if, in the
course of committing theft and with intent to obtain or maintain control of the
property, he (1) intentionally, knowingly, or recklessly causes bodily injury
to another, or (2) intentionally or knowingly threatens or places another in
fear of imminent bodily injury or death.  Tex. Penal Code Ann. § 29.02(a)(2)
(West 2003).  A robbery is aggravated if the person uses or exhibits a deadly
weapon in the course of committing the robbery.  Id. § 29.03(a)(2) (West
2003).  A firearm is a deadly weapon per se.  Id. § 1.07(a)(17)(A) (West
Supp. 2009); Ex parte Huskins, 176 S.W.3d 818, 820 (Tex. Crim. App.
2005).  

Okonzak identified appellant during the trial as the
man who was armed with the gun during the robbery.  Okonzak also identified
appellant “[a]lmost immediately” when Deputy Long presented him with a photo
lineup containing appellant’s picture.  The testimony of a single eye-witness
is sufficient to support a jury’s verdict.  Aguilar v. State, 468 S.W.2d
75, 77 (Tex. Crim. App. 1971); Walker v. State, 180 S.W.3d 829, 832
(Tex. App.—Houston [14th Dist.] 2005, no pet.); Harmon v. State, 167
S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d).  Moreover, appellant’s
fingerprints were found on the passenger side of the roof of Okonzak’s car, and
at least one of the bullets fired into Okonzak’s car was fired from the
passenger side.  Fingerprints from Jones and Davis were also recovered from the
car, and Okonzak identified Jones and Davis as the other participants in the
robbery.  

Looking at all the evidence in the light most
favorable to the verdict, we conclude that the evidence is sufficient for a
rational fact finder to conclude beyond a reasonable doubt that appellant is
guilty of aggravated robbery.  Appellant’s first issue is overruled.

Jury Argument during Punishment

In his second issue, appellant contends that his
sentence should be vacated and the case be remanded for a new punishment
hearing because of allegedly improper jury argument by the State.  During
closing argument in the punishment phase of the trial, appellant’s counsel
argued: 

The State has shown some — and I’m sure they will argue
that this man is beyond rehabilitation, shouldn’t even consider rehabilitating
him, just sentence him to a long period of time, but if you look at — and one
of the pieces of evidence that they’re going to elude to is the jail
information, but it you read those jail offenses and violations, you can tell
and you can see those are fairly minor violations.

*        *        *

But he has been there, he’s picked up some violations, but
those are not serious or egregious violations.

The following took place during the State’s closing
argument:

[THE PROSECUTOR]:  Not every inmate in the Harris County
Jail gets disciplined.  There’s a lot of people housed at the Harris County —

[APPELLANT’S COUNSEL]:  Your Honor, I object.  That’s not
part of the record.  That’s not part of the evidence.

[THE PROSECUTOR]:  May I respond, Judge?  That’s in
response to defense counsel’s argument.

THE COURT:  Overruled.  It’s argument.

[THE PROSECUTOR]:  There’s a lot of people who manage to
stay in the Harris County Jail without failing to obey orders of the deputies,
without a terroristic threat.  That goes to show you that even in the most
controlled environment, this man can’t play by the rules.

Appellant contends that the State’s argument
constitutes reversible error because (1) it does not come within the four
categories of permissible jury argument, (2) the trial court put its stamp of
approval on the argument by overruling counsel’s objection, (3) the prosecution
continued and repeated the argument, thereby compounding the error, and (4) the
record demonstrates that appellant was convicted on equivocal testimony and
subjectively interpreted fingerprint evidence.  

Proper jury argument falls within one of the
following categories: (1) summation of the evidence; (2) reasonable deduction
from the evidence; (3) in response to argument of opposing counsel; and (4)
plea for law enforcement.  Davis v. State, No. AP-74,393, — S.W.3d —,
2010 WL 3766661, at *19 (Tex. Crim. App. Sept. 29, 2010).  Error exists when
facts not supported by the record are interjected in the argument, but such
error is not reversible unless, in light of the record, the argument is extreme
or manifestly improper.  Brown v. State, 270 S.W.3d 564, 570 (Tex. Crim.
App. 2008).  In examining challenges to jury argument, we consider the remark
in the context in which it appears.  Gaddis v. State, 753 S.W.2d 396,
398 (Tex. Crim. App. 1988).  

First, the State’s argument was in response to
argument by appellant’s counsel that appellant’s jail offenses were “fairly
minor violations” and were “not serious or egregious violations.”  The State’s argument
was also a reasonable deduction from the evidence.  The State offered evidence
that appellant, while an inmate in the Harris County Jail, was disciplined for
(1) refusing to obey an order on October 14, 2008; (2) threatening on October
20, 2008; (3) refusing to obey an order on April 27, 2009; (4) interfering with
count on May 1, 2009; (5) refusing to obey an order on August 12, 2009; and (6)
refusing to obey an order on August 20, 2009.  Appellant went from October 2,
2008 to April 27, 2009, and May 1, 2009 to August 12, 2009, without being
disciplined.  

            The State’s jury argument
was not improper.  We overrule appellant’s second issue. 

Evidence Admitted during Punishment

In his third issue, appellant asserts that his
sentence should be vacated and the case remanded for a new punishment hearing
because the State introduced inadmissible cumulative and inflammatory evidence
during the punishment phase of the trial.  During the punishment phase, the
State presented evidence that appellant, while still wanted on aggravated
robbery in this case, had murdered William Bius.  When the State announced that
it was going to call Janet Bius, the mother of William, appellant’s counsel objected
at the bench to her testimony: 

[APPELLANT’S COUNSEL]:  Your Honor, I’m going to object to
the mother’s testimony.  I believe the death of the young man has been
established.  The evidence that the mother is going to provide is purely
cumulative, and I believe it is gauged or presented for the purpose of inciting
passions of the jury and has no relevance other than to do that.  And it’s
certainly not going to do anything to further establish the young man’s death. 


[THE PROSECUTOR]:  Judge, we just want the jury to know the
circumstances under which she found out and be able to introduce photographs of
life.  We do not intend to introduce victim impact testimony.

THE COURT:  Overruled.

We review a trial court’s evidentiary ruling for an
abuse of discretion.  Bowley v. State, 310 S.W.3d 431, 434 (Tex. Crim.
App. 2010).  Section 3(a)(1) of Article 37.07 of the Texas Code of Criminal
Procedure provides that the State may offer evidence “as to any matter the
court deems relevant to sentencing.”  Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
(West Supp. 2009).  Evidence is relevant during the punishment phase if it will
help the jury decide what sentence is appropriate for a particular defendant
given the facts of the case.  Hayden v. State, 296 S.W.3d 549, 552 (Tex.
Crim. App. 2009).  Janet Bius testified that William and her other son helped
her move from Texas to Kansas in the first week of August 2008, where she was
going to work on her PhD in chemical engineering.  Bius and her sons then
visited her sister in Missouri.  At the end of the first week of school, Bius
found out that William had been shot.  When Bius arrived at the hospital in
Houston, William was in intensive care.  “[W]hen I was in [intensive care]
holding his hand, they came in and told me he was — had just done a brain scan
and he was dead.”  Bius testified that, after making the decision to donate
Williams’ organs, 

the nurses let me go back into where he was.  The only
place I could touch him was his hand.  They were so warm.  It just — I kept
thinking, no, no, this isn’t true.  But, finally, the nurses came in and I left
and went back to Huntsville.  

During her testimony, Bius
pointed out her sister, brother, and niece sitting in the courtroom.  Two
photographs of William—one of him and Bius at his high school graduation party
and one of him at Bius’s sister’s house in Missouri—were admitted into evidence
over appellant’s objections.  

Appellant contends that Bius’s testimony was
cumulative regarding William’s death which had been proven through the
testimony of the medical examiner.  Although the trial court has wide
discretion to admit relevant evidence during the punishment phase of trial, victim
impact testimony regarding a victim not named in the indictment is
inadmissible.  See Haley v. State, 173 S.W.3d 510, 518 (Tex. Crim. App.
2005); Cantu v. State, 939 S.W.2d 627, 637 (Tex Crim. App. 1997); see also Ashire v. State,
296 S.W.3d 331, 343 n.5 (Tex. App.—Houston [1 Dist.], 2009, pet.
ref’d).[1]  Although it was
error for the trial court to admit Bius’s testimony, any error was harmless. 
Under Rule 44.2(b) of the Texas Rules of Appellate Procedure, non-constitutional
error “that does not affect substantial rights must be disregarded.”  Tex. R.
App. P. 44.2(b).  A substantial right is affected when the error had a
substantial and injurious effect or influence in determining the jury’s
verdict.  Haley at 518; Motilla v. State, 78 S.W.3d 352, 355
(Tex. Crim. App. 2002).  

In Cantu, victim impact testimony by the
mother of a second murder victim killed in the same episode but not named in
the indictment was admitted during punishment.  See 939 S.W.3d at 636. 
The mother testified as to her daughter’s good character, the search for her
daughter, and the impact the disappearance had on the rest of the family members,
and included pictures of her daughter’s sixteenth birthday party.  Id. The
court held that “evidence as to her good character, activities she enjoyed and
the impact of her on her family is not relevant as appellant was not on trial
for her murder and such evidence serves no purpose other than to inflame the
jury.”  Id. at 637.  However, the court held that the erroneous
admission of the mother’s testimony as to her daughter’s character and activities
was harmless beyond a reasonable doubt because the mother was one of thirty
witnesses who testified at punishment; her testimony comprised less than twenty
pages out of over 700 pages of testimony at punishment; the State did not
mention her testimony during argument; and the overwhelming focus during the
punishment phase was on the appellant’s behavior and the circumstances of the
offense.  Id.  Here, Bius’s testimony comprised seven out of 152 pages
of punishment testimony.  As in Cantu, the State never directly mentioned
or referred to Bius’s testimony during closing argument.[2]  Cf.
Haley, 173 S.W.3d at 519 (agreeing with court of appeals’ conclusion that
State’s argument “stressed and overemphasized” victim impact evidence in
justifying severe punishment, substantially affecting and influencing jury’s
punishment assessment).  Instead, the State focused on the circumstances
surrounding the aggravated robbery and the murder and appellant’s criminal
history and disciplinary records.  After reviewing the entire record, we
conclude that any error in the admission of Bius’s testimony did not affect
appellant’s substantial rights.  Appellant’s third issue is overruled.  Having
overruled all of appellant’s issues, we affirm the judgment of the trial court. 


 

                                                                                    

                                                                        /s/        Margaret
Garner Mirabal*

                                                                                    Senior
Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Jamison and Mirabal. 

Do
Not Publish — Tex. R. App. P. 47.2(b).

 









[1] “The danger of
unfair prejudice to a defendant inherent in the introduction of ‘victim impact’
evidence with respect to a victim not named in the indictment on which he is
being tried is unacceptably high. . . . We hold that such evidence is
irrelevant under Tex. R. Crim. Evid. 401 . . .”  Cantu, 939 S.W.2d at
637.  





[2]
While not directly quoting Bius, the State did evoke her testimony in its
argument: “William didn’t make a very good decision. And I think everybody here
that’s got kids knows when we send our children out into the world, this is
exactly what we are afraid of.  Because kids make bad decisions.  They don’t
know what’s out there.  And don’t you want it to be that way?  Don’t you want
your kids to feel like they live in a safe world?  But they don’t, not while
there’s people like him on the street.  It’s not safe.  But they didn’t know
that.  They’re from Huntsville.  They have no concept of what awaits for them
in parts of Houston.”  





*
Senior Justice Margaret Garner Mirabal sitting by assignment.