

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

Nos. 04-19-00192-CR & 04-19-00193-CR

Johnny Joe **AVALOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2016-CR-10374, 2018-CR-7068
Honorable Lori I. Valenzuela, Judge Presiding

**OPINION ON EN BANC RECONSIDERATION**

Opinion by:      Rebeca C. Martinez, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice (joined by Sandee Bryan Marion, Chief
          Justice and Patricia O. Alvarez, Justice)

Sitting en banc:  Sandee Bryan Marion, Chief Justice
          Rebeca C. Martinez, Justice
          Patricia O. Alvarez, Justice
          Luz Elena D. Chapa, Justice
          Irene Rios, Justice
          Beth Watkins, Justice
          Liza A. Rodriguez, Justice

Delivered and Filed: December 30, 2020

REVERSED AND REMANDED

This court previously ordered en banc reconsideration. We now withdraw our prior

opinions and judgment and substitute today's opinions and judgment in their stead.

**INTRODUCTION**

Johnny Joe Avalos, an adult, intellectually disabled person, pled guilty and was convicted of two counts of capital murder. The State did not seek the death penalty. When the death penalty is not imposed on a person convicted of capital murder, Texas law requires the automatic imposition of a life sentence without parole. *See* TEX. PENAL CODE ANN. § 12.31(a)(2). Avalos was sentenced in accordance with this statute, and, consequently, the trial court did not consider mitigating factors related to Avalos's intellectual disability during the punishment phase of trial.

The harshest penalty allowed by law for an intellectually disabled person is life imprisonment without parole. *See Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding that an intellectually disabled person may not be sentenced to death). On appeal, Avalos argues that the automatic imposition of life sentences without parole amounted to cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article I, section 13, of the Texas Constitution because he was denied an individualized assessment prior to the imposition of these harshest penalties. We agree with Avalos that the Eighth Amendment prohibits the automatic imposition of the punishment of life imprisonment without parole for an intellectually disabled person, and, consequently, we reverse the trial court's judgments and remand for resentencing.

**PROCEDURAL BACKGROUND**

Avalos pled guilty to two counts of capital murder. In his plea agreements, he and the State mutually agreed and recommended that punishment be assessed at "capital life." "Capital life" refers to section 12.31(a)(2) of the Texas Penal Code, which provides: "An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for . . . life without parole, if the individual committed the offense when 18 years of age or older." TEX. PEN. CODE ANN. § 12.31(a)(2). Avalos filed motions in the trial court challenging the constitutionality of his

automatic sentences. He argued the Supreme Court's decisions under the Eighth Amendment prohibit the automatic imposition of a life sentence without parole for an intellectually disabled person. The trial court denied Avalos's motions, accepted his guilty pleas, found him guilty of both capital murder offenses, and pronounced his life sentences in open court. Avalos timely appealed.[1]

### THE CONSTITUTIONALITY OF SECTION 12.31(a)(2) AS APPLIED TO INTELLECTUALLY DISABLED PERSONS

Avalos's sole issue on appeal is whether section 12.31(a)(2)'s requirement of an automatic life sentence without parole for capital murder, when the death penalty is not imposed, is unconstitutionally cruel and unusual as applied to intellectually disabled persons. Although neither the United States Supreme Court nor the Texas Court of Criminal Appeals have addressed this issue directly, we agree with Avalos that the prohibition on the automatic imposition of the punishment follows from the Supreme Court's holdings in *Atkins* and the Court's individualized sentencing cases.

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishments. *See* U.S. CONST. amend. VIII. Article I, section 13, of the Texas Constitution prohibits punishments that are cruel or unusual. TEX. CONST. art. I, § 13. Because there is "no significance in the difference between the Eighth Amendment's 'cruel and unusual' phrasing and the 'cruel *or* unusual' phrasing of Art. I, Sec. 13 of the Texas Constitution," we address Avalos's issue in light of Supreme Court decisions. *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997).

---

[1] After oral argument, we granted the parties' joint motion to abate these appeals for the trial court to make an express finding as to whether Avalos is intellectually disabled. Without objection by the State, the trial court found that Avalos is intellectually disabled under the standards announced by the Supreme Court. *See Moore v. Texas*, 139 S. Ct. 666 (2019); *Moore v. Texas*, 137 S. Ct. 1039 (2017).

In *Atkins*, the Supreme Court barred the execution of intellectually disabled individuals because the sentence is cruel and unusual punishment within the meaning of the Eighth Amendment. *Atkins*, 536 U.S. at 321. The Court later explained that the decision falls within a line of cases striking down "sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." *Miller v. Alabama*, 567 U.S. 460, 470 (2012); *see also Graham v. Florida*, 560 U.S. 48, 60–61 (2010). Central to the Court's reasoning in these cases is "the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." *Miller*, 567 U.S. at 469 (quotations omitted). Intellectually disabled defendants are "categorically less culpable than the average criminal." *Atkins*, 536 U.S. at 316. Intellectually disabled individuals "frequently know the difference between right and wrong and are competent to stand trial," but "by definition[,] they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others." *Id.* at 318. These impairments "make it less defensible to impose the death penalty as retribution for past crimes and less likely that the death penalty will have a real deterrent effect." *Roper v. Simmons*, 543 U.S. 551, 563 (2005) (citing *Atkins*, 536 U.S. at 319–20). Additionally, by nature of their diminished faculties, intellectually disabled defendants face an enhanced possibility of false confessions and a lessened ability to give meaningful assistance to their counsel. *Atkins*, 536 U.S. at 320–21.

Following *Atkins*, the Supreme Court decided that juvenile offenders, like intellectually disabled offenders, are in a class of defendants that is "constitutionally different" from other defendants for sentencing purposes. *Miller*, 567 U.S. at 471.[2] Members of each class of

---

[2] The State argues that we are bound by *Harmelin v. Michigan*, 501 U.S. 957 (1991), which held that the automatic imposition of a life sentence without parole for an adult was not cruel and unusual punishment. *See id.* at 961, 996.

defendants have diminished culpability compared to other offenders. *See Roper*, 543 U.S. at 570–71; *Atkins*, 536 U.S. at 318–20. While differences exist, this fundamental similarity makes the imposition of the death penalty excessive for individuals in each group. *See Roper*, 543 U.S. at 572–73; *Atkins*, 536 U.S. at 321. Therefore, the harshest penalty that can be imposed on individuals in each group is life imprisonment without parole. *See Miller*, 567 U.S. at 470, 476–78; *cf. Graham*, 560 U.S. at 69 ("[L]ife without parole is the second most severe penalty permitted by law." (quotations omitted)). As with a death sentence, imprisonment until an offender dies "alters the remainder of [the offender's] life by a forfeiture that is irrevocable." *See Miller*, 567 U.S. at 474–75 (quotations omitted).[3]

The Supreme Court held in *Miller* that a mandatory imposition of a life sentence without parole on a juvenile "runs afoul of . . . [the] requirement of individualized sentencing for defendants facing the most serious penalties." *Miller*, 567 U.S. at 465. A defendant facing the most serious penalties must have an opportunity to advance mitigating factors and have those factors assessed by a judge or jury. *See id.* at 489 ("*Graham*, *Roper*, and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles."); *see also Woodson v. North Carolina*, 428 U.S. 280, 304–05 (1976) (plurality opinion) (holding that a statute mandating a death sentence for first-degree murder violated the Eighth Amendment).

---

However, *Harmelin* does not control because it "had nothing to do with [intellectually disabled persons]." *Cf. Miller*, 567 U.S. at 481 (declining to extend *Harmelin* to juveniles because "*Harmelin* had nothing to do with children").

[3] To be sure, a life sentence without parole may be "an especially harsh punishment for a juvenile[, who] will on average serve more years and a greater percentage of his life in prison than an adult offender," but the difference in severity of the sentence when applied to a juvenile compared to an adult is one of degree. *See Graham*, 560 U.S. at 70. In other respects, the disproportionality of the punishment can be similar if mitigating factors are not considered. Diminished culpability for juvenile offenders and intellectually disabled offenders lessens the penological justifications for a sentence of life imprisonment without parole, which can render the sentence disproportionate. *See id.* at 71–74; *Atkins*, 536 U.S. at 318–20.

As with juveniles—for whom "*Graham* and *Roper* and [the Supreme Court's] individualized sentencing cases alike teach that in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult," *Miller*, 567 U.S. at 477—so too with the intellectually disabled; for them, the Supreme Court's decisions in *Atkins* and its individualized sentencing cases teach that a sentencer misses too much in imposing a State's harshest penalties if he treats every intellectually disabled person as alike with other adults. *See Atkins*, 536 U.S. at 316 (explaining that society views intellectually disabled defendants as "categorically less culpable than the average criminal"). Because Texas Penal Code section 12.31(a)(2) automatically imposes life imprisonment without parole, which is the harshest sentence an intellectually disabled person faces, the statute is unconstitutional as applied to intellectually disabled persons based on the combined reasoning of *Atkins* and the Court's individualized sentencing cases, which entitle defendants to present mitigating evidence before a trial court may impose the harshest possible penalty. *See id.*; *Miller*, 567 U.S. at 475–76.[4]

## CONCLUSION

We hold that section 12.31(a)(2) of the Texas Penal Code is unconstitutional as applied to intellectually disabled persons, and that the trial court erred by denying Avalos an opportunity to present mitigating evidence before imposing the sentences of life imprisonment without parole. We remand these cases for further proceedings consistent with this opinion.

Rebeca C. Martinez, Justice

PUBLISH

---

[4] Because our ruling follows from precedent and does not categorically bar any penalty, there is no need to review legislative enactments to discern "objective indicia of societal standards." *See Miller*, 567 U.S. at 482–83 (explaining that because the Court's holding did not categorically bar a penalty for a class of offenders or type of crime and the decision followed from precedent, the Court was not required to scrutinize legislative enactments before holding a practice unconstitutional under the Eighth Amendment); *cf. Graham*, 560 U.S. at 61 (explaining that in cases adopting categorical rules, "[t]he Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice,' to determine whether there is a national consensus against the sentencing practice at issue.").